**Hearing Date: 5/6/19 at 9:30 a.m.**
**Objection Deadline: 4/29/19 at 5:00 p.m.**

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Telephone: (212) 682-4940
Gerard DiConza (gdiconza@archerlaw.com)
Lance A. Schildkraut (lschildkraut@archerlaw.com)

*Counsel for Defendants*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

In re

JOE'S FRIENDLY SERVICE & SON INC., dba THATCHED COTTAGE AT THE BAY,

Debtor.

Chapter 7
Case No. 14-70001-reg

----------------------------------------------------------------------------x

In re

THATCHED COTTAGE LP,

Debtor.

Chapter 7
Case No. 14-70002-reg

----------------------------------------------------------------------------x

BETHPAGE FEDERAL CREDIT UNION and BUSINESS SERVICES GROUP, LLC,

Plaintiff,

-against-

THE TOWN OF HUNTINGTON, *et al.*,

Defendants.

Adv. Pro. No. 16-08035-reg

----------------------------------------------------------------------------x

**NOTICE OF DEFENDANTS' MOTION TO STAY THE PROCEEDING PENDING APPEAL**

**PLEASE TAKE NOTICE THAT** on **May 6, 2019 at 9:30 a.m.**, or as soon thereafter as counsel may be heard, a hearing (the "**Hearing**") shall be held at the United States Bankruptcy Court for the Eastern District of New York, Alfonse D'Amato Federal Courthouse,

290 Federal Plaza, Central Islip, New York 11722 (the "**Court**"), before the Honorable Robert E. Grossman, United States Bankruptcy Judge, on the motion, pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure (the "**Motion**"), of the Defendants the Town of Huntington (the "**Town**"), Joseph F. Cline ("**Cline**"), Richard Vacchio ("**Vacchio**") and Terence "Terry" McNally ("**McNally**", together with Cline and Vacchio, the "**Individual Defendants**"), for an order, substantially in the form annexed to the Motion, staying all matters in this Adversary Proceeding pending the determination of the appeal filed by the Individual Defendants.

**PLEASE TAKE FURTHER NOTICE,** that objections to the relief requested in the Motion, if any, must be in writing, conform with the Federal Rules of Bankruptcy Procedure and title 11 of the United States Code, state with particularity the grounds thereof, and be filed with the Court, with a courtesy copy to the Chambers of the Honorable Robert E. Grossman, United States Bankruptcy Judge, and served upon, so as to be received by, Archer & Greiner, P.C., attorneys for Defendants, 630 Third Avenue, New York, New York 10017, Attn: Gerard DiConza, no later than **April 29, 2019** as follows: (a) (i) through the Court's electronic filing system, which may be accessed through the internet at the Court's website at www.nyeb.uscourts.gov; and (ii) in portable document format (PDF) using Adobe Exchange Software for conversion; or (b) if a party is unavailable to file electronically, such party shall submit the objection in PDF format on a diskette in an envelope with the case name, case number, type and title of document, document number to which the objection refers and the file name on the outside of the envelope.

**PLEASE TAKE FURTHER NOTICE**, that the Hearing may be adjourned from time to time without further notice other than the announcement of such an adjournment in open Court.

Dated: April 15, 2019
New York, New York

ARCHER & GREINER, P.C.

By: /s/ Gerard DiConza

Gerard DiConza
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940

*Counsel for Defendants*

ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Telephone: (212) 682-4940
Gerard DiConza (gdiconza@archerlaw.com)
Lance A. Schildkraut (lschildkraut@archerlaw.com)

*Counsel for Defendants*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---

In re

JOE'S FRIENDLY SERVICE & SON INC., dba THATCHED COTTAGE AT THE BAY,

Debtor.

Chapter 7
Case No. 14-70001-reg

---

In re

THATCHED COTTAGE LP,

Debtor.

Chapter 7
Case No. 14-70002-reg

---

BETHPAGE FEDERAL CREDIT UNION and BUSINESS SERVICES GROUP, LLC,

Plaintiff,

-against-

THE TOWN OF HUNTINGTON, *et al.*,

Defendants.

Adv. Pro. No. 16-08035-reg

---

**MOTION TO STAY THE PROCEEDING PENDING APPEAL**

Defendants, the Town of Huntington (the "**Town**"), Joseph F. Cline ("**Cline**"), Richard Vacchio ("**Vacchio**") and Terence "Terry" McNally ("**McNally**", together with Cline and Vacchio, the "**Individual Defendants**"), by and through their undersigned counsel, submit this memorandum of law in support of their motion, pursuant to Rule 8007 of the Federal Rules of

Bankruptcy Procedure, for an order staying all matters in this Adversary Proceeding, pending the determination of the appeal filed by the Individual Defendants.

## PRELIMINARY STATEMENT[1]

1. Plaintiffs allege they were harmed because Defendants wrongfully (a) posted a placard on the previously closed Thatched Cottage catering hall (the "**Thatched Cottage**") located in the Town on November 20, 2014 (the "**Placarding Claims**") and (b) refused to remove the Placard after they purchased the Thatched Cottage on January 2, 2015 (the "**Post-Sale Claims**"). By decision (the "**Decision**") and Order entered on March 21, 2019, this Court denied Defendants' Motion for Summary Judgment. By Notice of Appeal dated April 3, 2019, the Individual Defendants timely appealed the Order to the District Court (the "**Appeal**"). Defendants now seek a stay of this Proceeding pending a final ruling on the Appeal.

2. The pending Appeal deprives this Court of jurisdiction to adjudicate Plaintiffs' claims against the Individual Defendants. Plaintiffs' claims are asserted under 42 U.S.C. § 1983 for alleged violations of Plaintiffs' constitutional rights, Counts 4-7 of the Amended Complaint (the "**Section 1983 Claims**"), and under New York law for alleged negligence and tortious interference with contract and business relations, Counts 1-3 of the Complaint (the "**State Law Claims**"). The Individual Defendants have appealed the denial of summary judgment and accordingly, this Court cannot properly enter findings of fact or conclusions of law with respect to the Individual Defendants.

3. The Court should also stay this Proceeding as to all Defendants because this Court cannot adjudicate Plaintiffs' claims against the Town without adjudicating the claims against the

[1] Exhibits referred to herein are attached to the Declaration of Gerard DiConza in support of Defendants' Summary Judgment Motion [Dkt. No. 69] (the "**DiConza Decl.**"), the Declaration of Richard McCord in Support of Plaintiffs' Opposition to Summary Judgment [Dkt. No. 79] (the "**McCord Decl.**"), or the Supplemental Declaration of Richard K. Milin in Further Support of Summary Judgment [Dkt. No. 101] (the "**Milin Decl.**")

Individual Defendants. According to Plaintiffs (and as found by the Court in the Decision), the claims arose when the Individual Defendants failed to follow the Town Code and policies in posting and removing the placard, not that the Town's policies were in themselves unconstitutional. Thus, the Town cannot be liable under the *Monell* doctrine.

4. Furthermore, a stay is necessary since this Court lacks jurisdiction to hear and adjudicate the Plaintiffs' claims against Defendants. The Placarding Claims and Post-Sale Claims do not "arise under" the Bankruptcy Code and do not "arise in" or are "related to" the underlying bankruptcy cases. Defendants previously moved to withdraw the reference (the "**Withdrawal Motion**") and this Proceeding should be stayed until the District Court determines the Withdrawal Motion. Withdrawal of the reference is sought on the basis that, *inter alia*, (a) Plaintiffs' Section 1983 Claims require significant interpretation of laws "affecting interstate commerce" as set forth in 28 U.S.C. § 157(d), (b) this Court lacks subject matter jurisdiction, and (c) even if it has jurisdiction, this Court lacks authority to enter final orders on Plaintiffs' claims. The Withdrawal Motion is currently pending before the Honorable Joanne Seybert.

5. Further, even if the Court had jurisdiction over Plaintiffs' claims – and it does not – this Proceeding should be stayed under the four-part test established by Second Circuit law: (a) Defendants will suffer irreparable injury absent a stay, (b) Plaintiffs will not incur a substantial injury if a stay is issued, (c) Defendants have shown "a substantial possibility…of success" on appeal, and (d) the public interest favors granting the stay. *See Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992).

6. Applying the test here, moving forward with this Proceeding while the Appeal remains pending would deprive the Individual Defendants of their fundamental rights to assert their immunity defenses and to appeal any denial of those defenses, which are intended to shield

them from costly and time-consuming trials, not just from liability. Also, Plaintiffs would not be injured by a stay – only monetary damages are at stake, and this Court (or the District Court) can proceed with a trial without undue delay if it is determined on appeal that the Individual Defendants' immunity defenses lack merit.

7. Further, Defendants have certainly shown at least a substantial possibility of success on appeal; Defendants are not required to show even that success is likely. Finally, public interest supports a stay of this Proceeding. Public interest plainly favors recognizing the Individual Defendants' right to assert an immunity defense – an important protection which helps ensure that qualified personnel seek government jobs – as well as recognizing the Defendants' sacrosanct right to appeal. Public interest also calls for curbing excessive municipal costs and conserving judicial resources. For these and the reasons below, there is no justification for continuing this Proceeding while the Appeal is pending.

## BACKGROUND

8. This Adversary Proceeding arises out of the same facts, claims and allegations asserted by R. Kenneth Barnard, as Chapter 7 Trustee (the "**Trustee**") of the Thatched Cottage and related debtor entities (the "**Debtors**"), which owned the Thatched Cottage and related real properties at the time the Placarding Claims arose. The Trustee commenced suit against the Defendants for the Placarding Claims (*see* Adv. Proc. No. 16-08025 (REG)), and eventually settled and released those claims by settlement agreement dated June 22, 2018 (the "**Settlement and Release**"). This Court approved the Settlement and Release by Order dated August 6, 2018. The Post-Sale Claims, which arise from alleged refusal by the Defendants to remove the placard, arose after consummation of the sale of the Thatched Cottage and related properties by the Trustee to Plaintiffs.

9. In its Decision, this Court denied Defendants' request for summary judgment dismissing Plaintiffs' claims based on immunity defenses. Under well-established precedent, the Individual Defendants are entitled to an immediate appeal of the denial of their immunity defenses. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (public official asserting qualified immunity defense may immediately appeal denial of that defense). *See also Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (Qualified immunity is "effectively lost if a case is erroneously permitted to go to trial." *Id.* Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.")

**RELIEF REQUESTED**

10. By this Motion, Defendants seek entry of an order, substantially in the form annexed hereto, staying all aspects of this Proceeding pending final determination of their Appeal.

**BASIS FOR THE RELIEF REQUESTED**

11. This Court has the requisite authority to stay this Proceeding while the Appeal is finally determined. Bankruptcy Rule 8007(a)(1)(D) provides that a party must move "first in the bankruptcy court" for the "suspension … of a proceeding …." Fed. R. Bankr. Proc. 8007(a)(1)(D). Bankruptcy Rule 8007(e) authorizes a bankruptcy court to (1) "suspend or order the continuation of other proceedings in the case" or (2) "issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest." Fed. R. Bankr. Proc. 8007(e)(1) & (2). For the reasons set forth below, justice requires a stay of this Proceeding.

**A. This Court Lacks Jurisdiction to Adjudicate Plaintiffs' Claims**

12. In the Motion for Summary Judgment, Defendants contested this Court's jurisdiction and its ability to enter final orders adjudicating Plaintiffs' claims. The Decision does

not cite to any authority for the Court's jurisdictional basis to rule on the Summary Judgment Motion and continue to hear Plaintiffs' claims.

13. Bankruptcy courts cannot create their own jurisdiction; they have only the jurisdiction permitted under the Constitution and given to them by Congress. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). With the passage of 28 U.S.C. § 1334, Congress invested the district courts with original and exclusive jurisdiction for cases "under title 11," that is, the actual bankruptcy case commenced by the filing of a petition, and original but not exclusive jurisdiction for civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a) and (b). Congress also granted the district courts the power to refer bankruptcy cases as well as civil proceedings which arise in or under the Bankruptcy Code and those related to bankruptcy cases to the bankruptcy courts. 28 U.S.C. § 157(a).

14. This Court lacks jurisdiction to adjudicate Plaintiffs' claims as they do not "arising under title 11." Claims "arise under title 11" when the cause of action or substantive right claimed is created by the Bankruptcy Code. *See In re Southeastern Materials*, 467 B.R. 337, 346 n.4 (Bankr. M.D.N.C. 2012) (citing cases). Plaintiffs' claims are not brought under, and are not created by, the Bankruptcy Code or invoke rights created by bankruptcy law. Rather, the claims arise under 42 U.S.C. §§ 1983, 1985 and 1988 and under New York tort law. Plaintiffs' claims do not concern rights created by bankruptcy law in any way.

15. Jurisdiction does not exist as Plaintiffs' claims do not "arising in" a case under title 11. Plaintiffs' claims are not based on any right expressly created by the Bankruptcy Code. Claims "arise in" a case under title 11 only when the rights at issue would have no existence outside of bankruptcy. *Kirschenbaum v. Fed. Ins. Co.* (*In re Ems Fin. Servs., LLC*), 491 B.R. 196, 203 (E.D.N.Y. 2013). Claims that "arise in" a bankruptcy case are claims that "by their

nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case." *Stoe v. Flaherty*, 436 F.3d 209, 218 (3d Cir. 2006). Plaintiffs' claims here, which are based on federal non-bankruptcy and New York state law, do not arise in the Debtors' bankruptcy cases and exist irrespective of those cases.

16. Finally, Plaintiffs' claims do not "related to" the bankruptcy cases. "Related to" proceedings are those whose outcome might have a "conceivable effect" on the estate. *Publicker Indus., Inc. v. United States* (*In re Cuyahoga Equip. Corp.*), 980 F.2d 110, 114 (2d Cir. 1992); *Pacor, Inc. v. Higgins* (*In re Pacor, Inc.*), 743 F.2d 984, 994 (3d Cir. 1984). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994; accord *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995). Bankruptcy Courts lack "related to" subject matter jurisdiction to determine claims between non-debtor parties, the outcome of which will not have any conceivable effect on a debtor's estate. *See In re Johns-Manville Corp*., 517 F.3d 52, 63 (2d. Cir. 2008) (holding that bankruptcy court lacked subject matter jurisdiction to enjoin direct claims asserted by third-party creditors of the debtor against a non-debtor insurance company based on insurance company's -- not the debtor's -- alleged misconduct). Here, Plaintiffs' claims would have no conceivable effect on the Debtors' bankruptcy cases and this Court lacks "related to" jurisdiction over the Plaintiffs' claims. Accordingly, the Court lacks jurisdiction to hear and adjudicate Plaintiffs' claims.

17. In addition to lacking jurisdiction, this Court lacks jurisdiction over the Individual Defendants during the pendency of the Appeal. The pending Appeal divests this Court of jurisdiction over Plaintiffs' claims against the Individual Defendants. *See, e.g., Griggs v.*

*Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the [appellate court] and divests the [trial court] of its control over those aspects of the case involved in the appeal."); *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (same). *See also In re Southold Dev. Corp.*, 129 B.R. 18, 19 (E.D.N.Y. 1991) (bankruptcy court divested of jurisdiction regarding matters on appeal and those impacting the appeal).

18. Here, the Appeal deprives this Court of jurisdiction to enter orders that would impact, affect or modify any issue related to the Appeal and any ruling, order or judgment entered against the Individual Defendants would be null and void. *Southold Dev. Corp.*, 129 B.R. at 19, 21 (holding that bankruptcy court's entry of an order modifying an appealed order is "void" and "invalid"). Lack of jurisdiction over Plaintiffs' claims not only requires a stay of the Proceeding against the Individual Defendants, but also against the Town. Only a stay of all of Plaintiffs' claims can prevent inefficient, duplicative and potentially inconsistent adjudications. Consequently, a stay of the Proceeding as a whole is necessary to protect all parties' rights. *See* Fed. Rule Bankr. P. 8007(e) (bankruptcy court may suspend or order the continuation of other proceedings in the case or issue any other appropriate orders during the pendency of an appeal to protect the rights of all parties in interest).

19. A stay is particularly necessary here because the District Court's ruling on whether the Individual Defendants are entitled to immunity will require it to address issues that impact directly on the liability of the Town. For example, the District Court may determine that the Individual Defendants are entitled to qualified immunity because they did not violate

Plaintiffs' constitutional rights – one of two potential bases for a finding of immunity.[2] And if the District Court finds that the Individual Defendants did not violate Plaintiffs' rights, the Town will also be entitled to dismissal of Plaintiffs' claims because the Town acted exclusively through the Individual Defendants.[3] *See, e.g., Soto v. City of New York*, 132 F. Supp.3d 424, 459 (E.D.N.Y. 2015) (holding that a municipality was not liable because its employees did not violate plaintiff's constitutional rights).

20. At a minimum, if the Individual Defendants prevail on their Appeal, a trial against the Town alone would be limited to whether any alleged constitutional deprivation was caused by an official Town policy because, under the *Monell* doctrine, the Town cannot be liable for ***any*** misconduct unless it was caused by an official Town policy. *See Olivera v. Town of Woodbury*, 281 F. Supp. 2d 674, 688-689 (S.D.N.Y. 2003) ("In order to prevail against the Town of Woodbury under either Section 1983 or Section 1981, the plaintiff must prove that the Officer(s) who deprived him of his rights were acting according to a Town of Woodbury policy or custom."); *see also Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995) (a constitutional violation can be imputed only if plaintiff proves "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.") (internal quotation marks omitted).

21. Accordingly, this Court's lack of jurisdiction over Plaintiffs' claims, as well as the Individual Defendants, requires a stay of this Proceeding.

---

[2] Governmental employees are entitled to qualified immunity when it is established that (1) ***there was no constitutional right violated*** or (2) the constitutional right was not clearly established at the time of the violation. *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014) (emphasis added).

[3] None of the Individual Defendants are members of the Town Board. It is undisputed that Mr. Cline is the Chief Town Engineer and has no policy making authority for the Town. The Town Board was established in accordance with Article 3 of the Town Law of New York and is comprised of an elected Supervisor and four elected Council members. The five-member Town Board is the policy-making authority of the Town.

**B. The Court Should Stay This Proceeding Because a Stay Would Prevent Irreparable Injury to Defendants, Who Have Shown a Substantial Possibility that They Will Succeed on the Merits, and Would Serve the Public Interest Without Causing Plaintiff any Substantial Injury**

22. Even apart from its lack of jurisdiction, this Court can and should stay this Proceeding based upon the Second Circuit's well-established, four-factor test. The Second Circuit directs courts to consider: (1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has shown "a substantial possibility, although less than a likelihood, of success" on appeal, and (4) how public interests may be affected. *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992); *see also Jenkins v. INS*, 32 F.3d 11, 14 (2d Cir. 1994); *In re Taub*, 470 B.R. 273, 277-78 (E.D.N.Y. 2012); *Albicocco v. Albicocco* (*In re Albicocco*), 2006 U.S. Dist. LEXIS 65359, **2-4 (E.D.N.Y. Sept. 13, 2006) (granting temporary stay pending appeal).

*A. Defendants Will Suffer Irreparable Harm*

23. Forcing the Individual Defendants to move forward with their defense in this Proceeding before their Appeal is determined would irrevocably deprive them of their right to assert immunity defenses and of their well-established right to appeal a denial of those immunities. "Qualified immunity protects federal and state officials from both civil damages and 'unnecessary and burdensome discovery or trial proceedings'…." *Soller v. Boudreaux*, 12-CV-0167, 2015 U.S. Dist. LEXIS 14084, *34 (E.D.N.Y. Feb. 3, 2015) (quoting *Spavone v. New York State Dept. of Corr. Services*, 719 F.3d 127, 134 (2d Cir. 2013)).

24. The entitlement to qualified immunity is an immunity from suit, rather than a mere defense to liability, that is effectively lost if the case is erroneously permitted to go to trial. *See Forsyth*, 472 U.S. at 526. Being forced to endure the costs, risks and reputational harm of being a defendant in a lawsuit is harm that obviously is not reparable by mere monetary damages

or even by vindication at trial. Further, a "loss of appellate rights is a 'quintessential form of prejudice' warranting a finding of irreparable harm." *ACC Bondholder Group v. Adelphia Commc'n Corp. (In re Adelphia Commc'n Corp.)*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007).

25. The Second Circuit has stated that issues of qualified immunity should be decided prior to trial because subjecting municipal employees to a trial when they would be otherwise immune would effectively forfeit the right to immunity. *Ying Jing Gan* v. *City of New York*, 996 F.2d 522, 532 (2d. Cir. 1993). Accordingly, this Proceeding should be stayed pending the outcome of the Individual Defendants' Appeal of the denial of their immunity defenses.

*B. Plaintiffs Will Suffer No Substantial Injury if a Stay Is Issued*

26. The Defendants merely seek to preserve the status quo while the Appeal is adjudicated and, if the Appeal is lost, the Proceeding may continue soon afterwards. Further, waiting for the Appeal to be adjudicated will cause Plaintiffs no substantial injury: they merely seek monetary damages, and will not lose these alleged claims merely because of any delay during the Appeal. *Cf. In re St. Johnsbury Trucking Co.*, 185 B.R. 687, 690-91 (S.D.N.Y. 1995) (finding that a brief delay in the distribution of estate property resulting from a stay of the confirmation order did not impose an undue burden on creditors).

27. Furthermore, although not addressed by the Court in the Decision, Plaintiffs' alleged damages are minimal, if non-existent. Plaintiffs allege they suffered $2 million in damages as a result of having to acquire the Thatched Cottage (after voluntarily bidding to acquire it) and re-selling the property for $2.8 million (approximately $1.8 million less than the Yama Raj $4.6 million bid). Plaintiffs, however, received approximately $625,000 of the Yama Raj deposit and significant other payments from insurance companies related to Super Storm Sandy damage suffered by the Thatched Cottage, as well as settlement proceeds from the title

insurer action referred to in the Decision. (*See* Dec. at 14.)[4] Plaintiffs' alleged damages here, if any, are minimal.

28. There can be no question, therefore, that the harm to the Individual Defendants from being forced to defend themselves in this Proceeding far outweighs any harm to Plaintiffs from waiting a short period to continue the action. Consequently, the balance of hardships decisively favors the Defendants, and this Proceeding should be stayed. *Cf. id.; Adelphia*, 361 B.R. at 347 ("the Second Circuit has consistently treated the inquiry of whether to grant a stay pending appeal as a balancing of factors that must be weighed.").

*C. Defendants Have a Substantial Possibility of Success on Appeal*

29. In considering a request for a stay pending appeal, this Court must also consider the Defendants' possibility of success on the merits. Although the movant must show "a substantial possibility… of success" on appeal, this standard is not high and is "less than a likelihood." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1992). Defendants easily meet the requisite standard here. There are several reasons why Defendants' Appeal will be successful.

***i. Plaintiffs Lack Standing to Assert the Placarding Claims***

30. On the Appeal, the District Court will review this Court's conflicting decisions on Plaintiffs' standing to assert the Placarding Claims against the Individual Defendants.[5] In its decision on the Defendants' Motion to Dismiss the Amended Complaint dated December 5,

[4] Plaintiffs filed a parallel action against Thatched Cottage's title insurer (the "**Insurance Proceeding**") alleging that the Thatched Cottage's encroachment on Town land caused Raj to renege on the purchase of Thatched Cottage – contrary to Plaintiffs' allegations here. (*See* Complaint, *BFCU v. Chicago Title Insurance Co.*, E.D.N.Y, Case No. 12-cv-2225.) Plaintiffs have yet to disclose and provide a full accounting of all proceeds received from insurers and the title insurer in settlement of this and other actions.

[5] And, to the extent the District Court reverses on the basis that Plaintiffs lack standing as against the Individual Defendants, the Placarding Claims against the Town should also be dismissed.

2016, the Court correctly recognized that Plaintiffs lacked standing to assert the Placarding Claims – the same claims asserted by the Trustee in his adversary proceeding against Defendants.[6] Notwithstanding its prior decision, the Court reversed its prior determination and held Plaintiffs have standing to assert the Placarding Claims. (Dec. at 22-24.) That conclusion is erroneous since the Trustee: (a) controlled the Thatched Cottage at the time of the placarding, (b) asserted the same Placarding Claims as Plaintiffs do here, and (c) settled and released the Defendants for the Placarding Claims.[7]

31. In the Decision, the Court erred in failing to hold that the Trustee, as representative of the Debtors' estates, is the only party who could bring the Placarding Claims since the placard was posted when the Thatched Cottage constituted property of the Debtors' estates. Any causes of action relating to the placard belong to the Trustee. "In a Chapter 7 case, 'there is no textual basis in the Bankruptcy Code to support the notion that a non-trustee, such as a creditor: (a) has independent standing to pursue … estate causes of action ….'" *Saviano v. Tylee* (*In re Tylee*), 512 B.R. 409, 420 (Bankr. E.D.N.Y. 2014) (quoting *In re Salander*, 472 B.R. 213, 220 (Bankr. S.D.N.Y. 2012) (quoting *Reed v. Cooper* (*In re Cooper*), 405 B.R. 801, 804 (Bankr. N.D. Tex. 2009)). Individual creditors do not have standing to assert estate claims, even if they are harmed by the alleged conduct of defendants.

32. Even secured creditors like BFCU lack standing to assert claims belonging to an estate even if the ultimate recovery on such claims provides a distribution to creditors. As the senior secured lender, BFCU has no greater right than any other creditor to assert the estates'

---

[6] *See* Dec. 5, 2016 Hrg. Tr., DiConza Decl., Exh. 65 at 17-18.

[7] In the Decision, the Court failed to address the Trustee's pursuit and settlement of the Placarding Claims. All claims relating to the placarding of the Thatched Cottage were resolved and released by the Settlement and Release. *See* Adv. Proc. No. 16-08025 (REG), Dkt. Nos. 108-1, 110. Under the Settlement and Release, the Defendants, including the Individual Defendants, were released of all claims relating to the posting of the placard.

causes of action. *See In re River Ctr. Holdings, LLC*, 394 B.R. 704, 712 (Bankr. S.D.N.Y. 2008) (holding debtors' lenders lack standing to assert debtors' claims and noting that "Lenders would have no more than the indirect benefits that estate creditors normally do when estate assets available to satisfy their claims are augmented or protected"). Claims for damages to the estates' properties are claims that only the Trustee may assert. *See In re Acton Foodservices Corp*., 39 B.R. 70, 72 (Bankr. D. Mass. 1984) (fraud cause of action arising from post-petition sale of asset that belonged to estate was estate property).

33. Relying on *Cunney v. Board of Trustees of Village of Grand View*, 56 F.Supp.3d 470 (S.D.N.Y. 2014), the Court held that Plaintiffs have standing to bring the Placarding Claims because Plaintiffs may have suffered injury as a result of Yama Raj's failure to close on the purchase of the Thatched Cottage. Dec. at 22-23. In *Cunney*, however, the property subject to the alleged constitutional violations was owned by a limited liability company, which was owned by the Cunney plaintiff and his brother. *Id.* at 473. It is undisputed that Plaintiffs did not have any ownership stake in the Thatched Cottage properties at the time of the placarding.

34. *Cunney* and the other cases relied on by the Court recognize that a plaintiff has standing to assert a constitutional violation claim by showing indirect injury. Whether Plaintiffs here suffered an indirect injury, however, does not give them standing to assert the Placarding Claims. Such conclusion would give every creditor of the Debtors' estates the rights to assert these claims. Prudential standing principals, which require plaintiffs to assert their own legal rights and interests, and not rest their claims on the legal rights or interests of third parties, prevents such an outcome. *See Savage & Assocs., P.C. v. Mandl* (*In re Teligent, Inc*.), 417 B.R. 197, 210 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 CIV 09674 (PKC), 2010 WL 2034509 (S.D.N.Y. May 13, 2010), *aff'd*, 640 F.3d 53 (2d Cir. 2011).

35. As such, only the Trustee, not Plaintiffs, would have standing to assert the Placarding Claims. *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989) ("If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action.").

36. In *Marshall v. Picard* (*In re Madoff Inv. Securities LLC)*, 740 F.3d 81, 89, 96 (2d Cir. 2014), the Second Circuit reaffirmed the principle that creditors cannot assert claims that are "derivative" of debtor estates' claims, explaining that "derivative" claims are claims that seek compensation for "secondary harm" that the creditors incurred because of a debtor's losses. The Court added that individual creditors cannot sue for damages as "a secondary effect from harm done to [the debtor]" or for "secondary harms flowing from … depletion of [the debtor's] funds." *See id.* The Second Circuit's rule that creditors cannot sue for "secondary harm" is a necessary supplement to the requirement that creditors can only sue for their own claims because claims for secondary harm risk duplicating debtors' damage claims. The Placarding Claims asserted by Plaintiffs undeniably seeks a recovery for "secondary harms" that arose from the alleged losses that the Trustee sought recovery for, settled and released. Accordingly, Plaintiffs lack standing to assert the Placarding Claims and those claims should be dismissed on appeal.

***ii. Plaintiffs' Post-Sale Claims Should be Dismissed on Appeal***

37. On Appeal, the District Court will review the constitutional rights allegedly violated by the Individual Defendants relating to the Post-Sale Claims. There is no evidence to support any allegation that any of the Individual Defendants took any action to harm or violate any of Plaintiffs' rights (constitutional or otherwise) after they acquired the Thatched Cottage.

38. BFCU is a federal credit union and had no intention of operating a catering hall when it bid at the Trustee auction for the Thatched Cottage. Rather, BFCU bid to protect its investment and sell the properties. There is not a scintilla of evidence to support any claim that the Town (or any of its employees or representatives) took any action to impede Plaintiffs' marketing efforts to sell the Thatched Cottage. In fact, the undisputed facts show that the Town and its employees endeavored to assist Plaintiffs in their efforts to market the properties. While the Court denied summary judgment on the basis that the placard was maintained for 17 months for reasons not apparent to the Court (Dec. at 42), this finding alone does not suffice to deny dismissal of Plaintiffs' Post-Sale Claims. The undisputed facts relating to Plaintiffs' Post-Sale Claims establish:

- The Town and its representatives scheduled a meeting immediately after the placard was posted which was held on December 4, 2014 at the Town offices with Town representatives, including an elected Council member, and representatives of the Trustee and BFCU. The purpose of this meeting was to address concerns and how to remove the placard.

- Additional meetings and other communications took place in 2015-16 between Town representatives and Plaintiffs to discuss the removal of the placard and during each of these meetings, Town representatives attempted to develop a plan with Plaintiffs (or prospective purchasers seeking to purchase Plaintiffs' interests) to address encroachments, safety concerns, the placard and other concerns that had previously been identified.

- A meeting was held on March 27, 2015 at the Town offices among representatives of Plaintiffs and the Town. Also in attendance was Brian Mohnihan, an engineer hired by Plaintiffs, who inquired about Town Building Department submission requirements. Mr. Mohnihan expressed opinions about the stability of the Thatched Cottage and indicated that Plaintiffs would hire a structural engineering firm. Mr. Mohnihan never followed up and Town representatives did not hear from him afterwards.

- Town representatives met with representatives of the Matrix Group, which entered into a contract dated October 6, 2015, to purchase the Thatched Cottage properties from Plaintiffs for $4.1 million. A meeting was held on December 4, 2015 between representatives of the Town and representatives of Matrix to discuss the process for removal of the placard. Matrix failed to purchase the

properties due to the death of principal and owner and never followed-up with the Town.

- After its Matrix sale fell through, another in-person meeting was held on January 29, 2016 between representatives of the Town and Plaintiffs to discuss the Thatched Cottage and the process to remove the placard.

- In March 2016, the Town discovered that the placard had been removed without Town permission and that substantial construction and repair work was taking place. On March 10, 2016, the Town posted another placard and issued a Stop Work Order.

- After discussions between counsel for the parties in March 2016, Plaintiffs submitted an engineer report which stated that the Thatched Cottage was safe for limited access and for limited purposes such as showing the facility to potential buyers and making repairs. After receipt of this report, the Town removed the placard and Plaintiffs were granted access to the premises for the limited purposed of making repairs and showing the property to potential purchasers.

- A meeting was held on August 3, 2016 between representatives of the Town and John Breslin who was representing new potential purchasers to discuss the properties and steps necessary to open the Thatched Cottage. Plaintiffs subsequently sold the Thatched Cottage in late 2016.

39. All these facts are undisputed (Defendants Statement of Undisputed Facts [Dkt. No. 67] ("**DSOF**") ¶¶ 199-235) and the Post-Sale Claims should be dismissed on appeal.

***iii. The District Court Will Review The "Emergency" Standard Applied by This Court in the Decision***

40. In the Decision, the Court erroneously failed to grant summary judgment in favor of the Individual Defendants on the basis that the placard was posted in reaction to an "emergency". According to the Court, "this emergency and the alleged danger to the public is far from an undisputed fact." (*See* Dec. at 3; *see also* Dec. at 17, 21.) The determination to post the placard, however, was not based on an "emergency" and the Court's application of the emergency provisions of the Town Code was erroneous. The undisputed facts establish that the posting of the placard was made only after Mr. Cline received the engineering reports calling into question the structural integrity of the Thatched Cottage on November 13, 2014, *seven days*

*before the placard was posted*. (DSOF 106-113). The undisputed the facts also establish that while Cline considered alternatives, the decision to placard was made after consultation with McNally and Vacchio on November 18. (DSOF 131-135). The placard was posted two days later, on November 20.

41. Contrary to the conclusions of the Court, Cline never argued, raised or invoked the "emergency" procedures or standards applied by the Court. Cline's testimony is uncontroverted in that he made the decision to placard under "Unsafe Structure" provisions of the NYPMC, which does not require an emergency finding. (*Id.*) In response to questioning from Plaintiffs' counsel, Mr. Cline testified that he was aware no public events were scheduled at the Thatched Cottage as it had been closed and abandoned at the time of placarding:

> Q. What were the ramifications of doing something?
>
> A. Well, we thought very little at the time. Since the building was not being used for any activities, we thought there would be very little ramifications. No bride was going to have her wedding cancelled or anything like that. The building was abandoned.

Cline 6/1/17 Tr. McCord Decl. Exh. 6 at 54 7:15.[8]

42. The undisputed facts establish that placarding was based on Mr. Cline's determination that the Thatched Cottage was "unsafe" as a result of reviewing several engineering reports calling into question the structural integrity of the building, not as a result of

---

[8] After the decision to post the placard was made on November 18, Mr. Cline was to discuss the next steps taken.

> Q. After you determined to post the placard on the property, did you request anyone actually physically accomplish that posting?
> A. It was agreed on the 18th that Rich Vacchio would take care of the posting.
> Q. Was he instructed to post it immediately?
> A. No.
> Q. Did you instruct him as to when you wanted to see the placard posted on the property?
> A. No.

(Cline Tr. 6/1/17 McCord Decl. Exh. 6 at 56-57.)

any perceived emergency. (DSOF 131-135; Cline Tr. 2/4/16 DiConza Decl. Exh. 31 at 83; McNally Tr. DiConza Decl. Exh. 6 at 98.) Mr. Cline's contemporaneous memo to Town Councilman Mark Cuthbertson confirms that the placarding was posted pursuant to his determination that the Thatched Cottage was unsafe. (*See* McCord Decl. Exh. 56.)

43. Notwithstanding the uncontroverted and undisputed facts to the contrary, the Court made its decision based on the emergency procedures of the Town Code for placarding a property and, as a result, denied summary judgment on the basis that Defendants failed to abide by those procedures. The Court also incorrectly determined that the Town Code "precludes reliance on the [New York Property Maintenance Code (the "**NYPMC**")]" since the NYPMC is less restrictive than the Town Code. Dec. at 18-19.

44. As recognized by the Court, the Town Code applies and supersedes the NYPMC only if the Town "opted out" of enforcing the NYPMC in favor of the allegedly more restrictive Town Code. Dec. at 18. However, there is no evidence that the Town ever opted out and the Town Code is not listed by the Code Council of the Department of State as a municipality that has successfully opted out of the NYPMC.[9] Pursuant to section 379 of the Executive Law, the Town would be required to take certain steps for the Town Code to supersede the NYPMC, including petitioning the New York State Fire Prevention and Building Code Council and requesting that it make a determination over whether the Town Code is more stringent that the NYPMC. The Town Code provisions would only supersede the NYPMC if, and only if, the Counsel makes an affirmative determination that the Town Code provisions are more restrictive.

[9] The Code Council provides a list of local laws and ordinances that have been reported to the Code Council as imposing higher or more restrictive standards and have been adopted by the Code Council in whole or in part. *See* https://www.dos.ny.gov/dcea/mrls.html.

45. Even assuming, *arguendo*, that only the Town Code applies, the Town Code provision authorizing the placarding tracks section 107 of the NYPMC, which is entitled "Unsafe Structures and Equipment" and was relied on by Defendants to placard, almost verbatim.

46. The NYPMC provision relied on to post the placard provides:

> When a structure is ***found to be unsafe*** … such structure shall be condemned pursuant to the provisions of this code.

NYPMC § 107.1 (McCord Dec. Exh. 71) (emphasis added).

> Whenever a structure has been condemned under the provisions of this section, ***a notice shall be posted*** in a conspicuous place in or about the structure affected by such notice. If the notice pertains to equipment, it shall be placed on the condemned equipment.

NYPMC § 107.3 (McCord Decl. Exh. 71) (emphasis added).

47. Town Code § 124-62, in effect in November 2014, similarly provides that:

> Placement of placard. Whenever, ***in the judgement of the Code Officer***, a structure, building, equipment or unit ***is unsafe*** or hazardous to life or property or has been condemned as unsafe, ***a placard may be posted*** in a conspicuous place in or about the structure, building, dwelling or unit, and if the notice pertains to equipment, it shall also be posted on the equipment.

Town Code § 124-62 (McCord Decl. Exh. 73) (emphasis added).

48. There are no differences between the NYPMC and Town Code provisions authorizing the posting of a placard when a determination is made that a building or structure is "unsafe". The undisputed facts establish that the decision to placard was made only after Mr. Cline made a determination that the Thatched Cottage was unsafe. The posting of the placard was therefore in accordance with the applicable Unsafe Structure provisions of the NYPMC, *as well as the Town Code*.

**iv. The Court Erred in Denying Summary Judgment Dismissing Plaintiffs' Claims for Their Failure to Commence an Article 78 Proceeding**

49. On the Appeal, the District Court will determine whether Plaintiffs' Section 1983 Claims against the Individual Defendants should have been dismissed for Plaintiffs' failure to seek post-deprivation remedies before commencing suit. In its Decision, the Court erred in concluding that Plaintiffs' failure to exercise any post-placarding remedies does not preclude their procedural due process claims. Dec. at 33-34. Plaintiffs' procedural due process claims, however, fail as a matter of law since Plaintiffs had adequate post-deprivation remedies and it is undisputed that they failed to avail themselves of any remedies. For instance, Plaintiffs failed to commence an Article 78 proceeding. *See Muller Tours, Inc. v. Vanderhoef*, 13 F. Supp. 2d 501, 506-07 (S.D.N.Y. 1998). The fact that Plaintiffs did not challenge the decision to post the placard should be of no avail, because "[a] party's failure to avail itself of an Article 78 proceeding precludes a subsequent Due Process claim. *Id.* at 507 (citation omitted).

50. To the extent the District Court determines on the Appeal that Plaintiffs should have first availed themselves of applicable post-deprivation remedies, the Section 1983 Claims should be dismissed as against all Defendants.

***v. The Court Erred in Denying Individual Defendants' Qualified Immunity based on Application of the Wrong Law***

51. The Second Circuit holds that a government official is entitled to qualified immunity if the official's conduct did not violate a plaintiff's ***clearly established*** constitutional rights or if it would have been ***objectively reasonable*** for the official to believe that his conduct did not violate plaintiff's rights. *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003) (emphasis added). *See also Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). In the Second Circuit, "a right is clearly established if (1) the law is defined with reasonable clarity, (2)

the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (alterations and internal quotation marks omitted); *see also Talley v. Brentwood Union Free Sch. Dist.*, 728 F. Supp. 2d 226, 234-35 (E.D.N.Y. 2010).

52. The undisputed facts establish the Individual Defendants did not violate Plaintiffs' clearly established rights. First, the undisputed facts establish that Plaintiffs' Placarding Claims are based entirely on alleged actions taken against the Trustee, not Plaintiffs. With respect to the Post-Sale Claims, Plaintiffs do not allege any action undertaken by the Individual Defendants that would amount to violation of a "clearly established right."

53. The Court erred when it concluded that Plaintiffs had a "constitutionally protected property" interest, notwithstanding that Plaintiffs did not own the Thatched Cottage at the time it was placarded. Dec. at 25-26. The Court relied on *First Nat. Acceptance Co. v. City of Utica, N.Y.*, 26 F.Supp.3d 185 (N.D.N.Y. 2014) for the proposition that BFCU, as the senior secured lender has constitutionally protected rights in the Thatched Cottage. *First National*, however, is inapposite as it involved a claim by the mortgagee against the City of Utica for failure to provide it with notice of the demolition of a building. Unlike *First National*, the posting of the placard did not result in the demolition and total destruction of the Thatched Cottage. Moreover, unlike the property owner in *First National* who did not assert a claim against the City, the Trustee here asserted the Placarding Claims.

54. Moreover, the Court failed to consider Defendants' arguments that nothing changed by the placarding. Whatever rights Plaintiffs had the moment prior to the placarding, those rights existed the moment after the placarding. The Thatched Cottage was closed prior to

placarding and nothing changed as a result of the posting of the placard. Defendants did not deprive Plaintiffs of any rights, especially constitutionally guaranteed rights.

55. The Court also erred when it denied summary judgment to the Individual Defendants as they have not shown their actions did not violate "clearly established" rights by failing to comply with the "emergency" procedures for placarding properties and follow the Town Code. Dec. at 41 (citing to Town Code § 124-61.) According to the Court, "[t]he Town Code establishes procedures for placarding under emergency circumstances" and, since the Individual Defendants "ignored" the Town Code procedures, they have not shown that their actions did not violate a "clearly established" right. *Id.* at 41-42. As noted above, the Court's conclusion regarding the application of Town Code 124-61 to alleged emergency circumstances is wrong and the undisputed evidence establishes that the placard was posted on the Thatched Cottage as an "unsafe" structure, in accordance with the Town Code § 124-62 (as in effect in 2014) and NYPMC §§ 107.1 & 107.3.

56. The Individual Defendants did not violate Plaintiffs' clearly established rights and are entitled to dismissal of Plaintiffs' claims based on immunities provided under law.

***vi. The Undisputed Facts Establish Defendants' Conduct was Objectively Reasonable***

57. The Court's decision to deny the Individual Defendants' qualified immunity defense is also erroneous since the undisputed facts establish that their conduct was objectively reasonable.

58. As was noted in the Decision, the Court reopened discovery concerning the so-called Tauscher Engineering Report on Thatched Cottage in February 2018. As a result of the additional discovery produced in connection with the Tauscher Engineering Report, additional discovery was produced and submitted as evidence in support of Defendants' Summary

Judgment Motion. Without explanation, the Court disregarded the new evidence in considering the Summary Judgment Motion.

59. Based on the evidence from discovery undertaken prior to filing the Summary Judgment Motion and in connection with the Tauscher Engineering Report, the undisputed facts establish that Cline was in almost daily communication with representatives of Raj (including his counsel John Breslin, and architect Neal Hoffman) during the week after he received the engineer reports up to and after the posting of the placard. It is also undisputed that in those communications, Mr. Cline informed Raj's representatives that he received the engineer reports, was concerned about the structural integrity of the Thatched Cottage and would post the placard. Mr. Cline contacted Mr. Hoffman six days before Thatched Cottage was placarded to discuss the engineering reports and offer them to Raj. The facts establish that Mr. Hoffman advised Raj that he would need to retain his own engineer to review the reports Mr. Cline was relying on and address the Town's concerns.

60. The evidence reveals that John Breslin, counsel for the Raj family wrote a letter to his client dated November 17, 2014, three days before the placard was posted. In the letter, Mr. Breslin advised his client that Cline had called him and Mr. Hoffman to discuss Cline's concerns about the engineers' reports he had received and the Thatched Cottage's structural deficiencies. Mr. Breslin advised his client that Thatched Cottage could be reopened if the Town received an engineer's report. He also stated that Mr. Cline "assured me that he will work with us diligently to accomplish your goal to reopen the facility quickly and to insure it's safe for all patrons which is a goal you no doubt share with the Town." (Breslin Tr., Milin Dec. Exh. 1 at 214-15.) Both Messrs. Breslin and Hoffman testified that the Town attempted to ***help*** – not obstruct – Raj in his attempt to purchase and re-open the Thatched Cottage. (Breslin Tr., Milin Dec. Exh. 1 at 81.)

61. The undisputed facts also establish that during the week before the placard was posted on November 20, the Trustee was on notice of Mr. Cline's concerns through Raj's representatives. (DSOF 120-124.) Email communications show that the Trustee was on notice of Mr. Cline's concerns about the safety of the Thatched Cottage on November 14, 2014, six days before the Cottage was placarded. Notwithstanding, neither the Trustee nor his counsel ever told any Defendant that they should contact the Trustee directly rather than communicate through Raj's representatives. The Trustee chose to maintain silent. (DSOF 125.) The Trustee's first direct communication with the Town occurred on November 20, 2014, when Trustee's counsel called the Town Attorney and threatened suit unless the Town immediately removed the placard.

62. After the placard was posted on November 20, 2014, the Trustee learned of it immediately. His counsel at last contacted the Defendants, and the Defendants acted promptly to defuse any dispute. Defendants agreed that Cline would meet with engineers for Raj, the Trustee or BFCU to inspect the Thatched Cottage on December 3, 2014. Defendants also agreed to meet with representatives of BFCU on December 4, 2014 and several times thereafter to discuss steps necessary to remove the placard. The undisputed facts establish that Defendants acted reasonably in the decision to placard the previously closed Thatched Cottage and addressing the concerns set forth in the engineer reports received by Mr. Cline.

63. The undisputed facts establish that Defendant, McNally, did nothing more than discuss placarding Thatched Cottage with Defendant Cline and that McNally neither directed Cline, nor had authority to direct Cline, to do so. McNally plainly did not violate any constitutional rights, let alone clearly established rights, by engaging in a mere discussion with a colleague. Vacchio, like McNally, merely discussed placarding with his supervisor Cline, and

then placarded at Cline's direction, knowing that Cline had expressed safety concerns. Thus, Vacchio too did not violate any clearly established rights and is entitled to qualified immunity. *Cf. Thomas v. Digglio*, 2016 U.S. Dist. LEXIS 176237, at *21 (E.D.N.Y. Dec. 19, 2016) (granting summary judgment and dismissing claims against individual defendant where evidence established defendant was merely complying with her job duties).

64. It was undeniably "objectively reasonable" for both McNally and Vacchio to believe that their conduct in discussing placarding – and, in Vacchio's case, following his boss's instruction to placard because of safety concerns – was lawful. Therefore, they are both entitled to dismissal based on qualified immunity for this reason as well. *See, e.g., Davis v. Scherer,* 468 U.S. 183, 190 (1984) ("Even defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard.")

65. Finally, Cline, like McNally and Vacchio, is entitled to qualified immunity for several reasons. First, the Court erroneously found that the placarding was in reaction to an "emergency", "which justified departure from previously established procedures in order to protect the public." The undisputed facts show that Cline made the decision to placard the previously closed Thatched Cottage only after he:

- personally inspected the Thatched Cottage premises in October 2014 (several weeks prior to the placarding) as part of discussions with Yama Raj's representatives about their winning bid to purchase the Cottage,

- reviewed licensed engineers' reports on November 13, 2014 that raised concerns over the structural integrity of the Thatched Cottage,

- discussed the status of the Thatched Cottage and reports with McNally, the Town Chief Fire Marshall, and Vacchio, a Town building inspector,

- discussed the engineer reports with counsel and an architect for the Raj family,

- called the engineer who authored two of the main engineer reports to verify whether he stood behind his reports,
- made a determination that the property was unsafe, and
- agreed to meet with an engineer for Raj (or any other interested party) at Thatched Cottage concerning the placard.

66. Plaintiffs, nor the Court in its Decision, cited to any authority for the proposition that Cline's actions under these circumstances violated constitutional rights, let alone "clearly established rights",[10] and was not "objectively reasonable."[11] The undisputed facts show that Cline did not violate anyone's rights – he placarded Thatched Cottage out of safety concerns, but he promptly promised the buyer's representative to work diligently with the buyer to help him to reopen Thatched Cottage quickly. Cline also agreed to cooperate with the Raj family and conduct a prompt further inspection of the Cottage – which was not in operation at the time – with an engineer for Raj or another party in interest before anyone incurred any harm.[12]

---

[10] "Clearly established law" must be "particularized" to the facts of each case and should not be defined "at a high level of generality[.]" *See, e.g., White v. Pauly*, 137 S. Ct. 548, 552 (2017).

[11] The Court's denial of summary judgment in an effort to obtain testimonial evidence about the Individual Defendants' subjective motives is inconsistent with Second Circuit law on qualified immunity. The Second Circuit has specifically rejected a subjective analysis of a town employee's actions as a basis for determining whether qualified immunity applies. *See Zahra v. Town of Southold,* 48 F.3d 674, 687 (2d Cir. 1995). Instead, the courts' "concern is with the objective reasonableness of [town employee] actions at the time, and is not a subjective inquiry into their personal motives." *Id.* Accordingly, the controlling test – as discussed above – is whether Mr. Cline's determination to placard was objectively reasonable in light of the fact that (a) he received engineers' reports showing structural integrity issues, (b) he personally inspected the Thatched Cottage several weeks prior to his decision, (c) he discussed the status of the Thatched Cottage with McNally, the Town Chief Fire Marshall, and Vacchio, a Town inspector, (d) he discussed the reports with counsel and an architect for the Raj family, (e) he called the engineer who authored two of the main engineer reports to verify whether he stood behind his reports, and (f) he quickly agreed to meet with an engineer at Thatched Cottage concerning the placard.

[12] The relevant query is whether Cline's conduct was objectively reasonable "'in light of the legal rules that were clearly established at the time it was taken.'" *Digglio*, 2016 U.S. Dist. LEXIS 176237, at *30. Cline's alleged negligence in failing to conduct his own structural inspection in light of licensed engineers' reports showing safety concerns does not defeat his qualified immunity defense. *See id.* at *32 ("At most, plaintiff is arguing that the caseworkers should have done a more thorough investigation, but that is a simple negligence claim, not the kind of willful or reckless indifference that overcomes qualified immunity.")

67. The undisputed facts also establish that Cline did not have any knowledge of the Trustee or Plaintiffs until after the placard was posted. The Trustee purposely and intentionally avoided any contact with the Town and Cline until after the placard was posted. The Trustee testified that notwithstanding receipt of the engineer reports in August 2014, he never contacted anyone at the Town as he was selling the Thatched Cottage "as is" and had no interest in communicating with the Town, nor did he care for the Town's position with respect to the Thatched Cottage. It was therefore objectively reasonable for Cline to believe that his conduct and communications with Raj's representatives were proper.

68. For the foregoing reasons, all three of the Individual Defendants – McNally, Vacchio and Cline – are entitled to qualified immunity as a matter of law. Accordingly, the undisputed facts establish that the Individual Defendants have – at the very minimum – a substantial possibility of success on the merits of their appeal.

*D. Compelling Public Interest Supports Granting a Stay*

69. The key public interest concerns at issue here are the correct application of the law, the protection of parties' right to appeal. *See In re Nw. Missouri Holdings, Inc.*, No. BR 15-10728-BLS, 2015 WL 3638000, at *3 (D. Del. June 11, 2015) ("[T]he public has an interest in correct application of the law."). Whether the Individual Defendants are entitled to qualified immunity raises numerous complex legal issues. The Individual Defendants strongly disagree with the Court's denial of their qualified immunity defense and wish to exercise their right to an appeal. As explained above, Defendants have made the requisite showing of a likelihood of success on appeal. Further, Defendants will be irreparably harmed if no stay is issued, this Proceeding continues while the Appeal is pending. On the other hand, if a stay is issued and the denial of Summary Judgment is upheld on appeal, the delay would cause no (or at most

negligible) harm to Plaintiffs. In these circumstances, the prevailing public interest that the dispute be decided finally and correctly supports the issuance of a stay to preserve the status quo.

70. The public interest in avoiding excessive municipal costs, which are ultimately borne by its taxpayers, and conserving judicial resources also calls for staying this Proceeding. In addition to the Appeal, the Withdrawal Motion is currently pending before the District Court. Until that Motion is determined by the District Court, this Proceeding should be stayed.

WHEREFORE, the Defendants respectfully request that this Court enter an order, substantially in the form as annexed hereto granting their motion to stay this Proceeding until such time as the Appeal has been determined and grant such other and further relief as is just.

Dated: April 15, 2019
New York, New York

ARCHER & GREINER, P.C.

/s/ Gerard DiConza
Gerard DiConza
Lance A. Schildkraut
630 Third Avenue
New York, New York 10017
Telephone: (212) 682-4940
Email: gdiconza@archerlaw.com
lschildkraut@archerlaw.com

*Counsel for Defendants*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

In re

JOE'S FRIENDLY SERVICE & SON INC., dba THATCHED COTTAGE AT THE BAY,

Debtor.

Chapter 7
Case No. 14-70001-reg

In re

THATCHED COTTAGE LP,

Debtor.

Chapter 7
Case No. 14-70002-reg

BETHPAGE FEDERAL CREDIT UNION and BUSINESS SERVICES GROUP, LLC,

Plaintiff,

-against-

THE TOWN OF HUNTINGTON, *et al.*,

Defendants.

Adv. Pro. No. 16-08035-reg

**ORDER GRANTING DEFENDANTS' MOTION**
**TO STAY THE PROCEEDING PENDING APPEAL**

UPON the motion dated April 15, 2019 (the "**Motion**") of Defendants, the Town of Huntington (the "**Town**"), Joseph F. Cline ("**Cline**"), Richard Vacchio ("**Vacchio**") and Terence "Terry" McNally ("**McNally**", together with Cline and Vacchio, the "**Individual Defendants**"), for an order, pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, staying all matters in this Adversary Proceeding pending the determination of the appeal filed by the Individual Defendants; and upon the hearing to consider the Motion having been held on May 6, 2019; and after due deliberation and for the reasons stated at the hearing,

the Motion is granted and all matters in this Adversary Proceeding are stayed pending a determination of the appeal filed by the Individual Defendants of this Court's Order and Decision denying Defendants' Motion for Summary Judgment dated March 21, 2019.