UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

In re:

JOE'S FRIENDLY SERVICE & SON INC., d/b/a
THATCHED COTTAGE AT THE BAY,

        Debtor.

-----------------------------------------------------------------X

In re:

THATCHED COTTAGE LP,

        Debtor.

-----------------------------------------------------------------X

BETHPAGE FEDERAL CREDIT UNION and
BUSINESS SERVICES GROUP, LLC,

        Plaintiffs,

   -against-

THE TOWN OF HUNTINGTON, *et al.*,

        Defendants.

-----------------------------------------------------------------X

Chapter 11 Case
Case No. 8-14-70001-reg

Chapter 11 Case
Case No. 8-14-70002-reg
(Jointly Administered)

Adv. Pro. No. 8-16-8035-reg

---

## MEMORANDUM OF LAW IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO STAY THIS PROCEEDING PENDING APPEAL

---

### CERTILMAN BALIN ADLER & HYMAN, LLP
*Attorneys for Bethpage Federal Credit Union*
*and Business Services Group, LLC*
Richard J. McCord, Esq. (RJM 3290)
Robert D. Nosek, Esq. (RDN 7676)
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Telephone: (516) 296-7000
Facsimile: (516) 296-7111

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT......................................................................................................................... 4

    THE INDIVIDUAL DEFENDANTS' APPEAL DOES NOT DEPRIVE
    THE COURT OF JURISDICTION TO RESOLVE THIS DISPUTE ON THE MERITS ........ 4

    THE DISTRICT COURT CANNOT HEAR THE APPEAL...................................................... 5

    THE ISSUE OF QUALIFIED IMMUNITY SHOULD BE DEEMED WAIVED
    BECAUSE THE INDIVIDUAL DEFENDANTS FAILED TO PLEAD IT ............................ 9

    THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO A STAY
    PURSUANT TO THE SECOND CIRCUIT'S FOUR-FACTOR ANALYSIS ...................... 12

        A.    The Individual Defendants Will Suffer No Irreparable Injury Absent a Stay......13

        B.    Plaintiffs Will Suffer Substantial Injury If a Stay is Issued.............................14

        C.    The Individual Defendants Have Little to No Possibility of Success
            on Appeal...................................................................................................16

        D.    No Compelling Governmental Interest Supports Granting a Stay.....................20

CONCLUSION.................................................................................................................... 21

6847265.2

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Adelphia Commc'ns Corp.*,
   333 B.R. 649 (S.D.N.Y. 2005)............................................................................................4, 13

*In re Adelphia Commc'ns Corp.*
   361 B.R. 337 (S.D.N.Y. 2007).................................................................................................12

*In re Baker*,
   No. 1-01-24227(DEM), 2005 WL 2105802 (E.D.N.Y. Aug. 31, 2005)..................................21

*Bean v. City of Buffalo*,
   822 F. Supp. 1016 (W.D.N.Y. 1993).........................................................................7, 8, 16, 17

*In re Bijan-Sara Corp.*,
   203 B.R. 358, 360 (B.A.P. 2d Cir. 1996)................................................................................12

*Blissett v. Coughlin*,
   66 F.3d 531 (2d Cir. 1995)................................................................................................10, 11

*In re Deep*,
   288 B.R. 27 (N.D.N.Y. 2003).................................................................................................12

*DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*,
   952 F.2d 661 (2d Cir. 1992)......................................................................................................8

*Gomez v. Toledo*,
   446 U.S. 635, 100 S.Ct. 1920 (1980).......................................................................................9

*Green Point Bank v. Treston*,
   188 B.R. 9 (S.D.N.Y. 1995).....................................................................................................12

*Harlow v. Fitzgerald*,
   457 U.S. 800, 102 S. Ct. 2727 (1982)....................................................................................5, 9

*Hirschfeld v. Bd. of Elections in City of New York*,
   984 F.2d 35 (2d Cir. 1993)..............................................................................................12, 14

*In re Integrated Res., Inc.*,
   No. 90-B-10411 (CB), 1990 WL 325414 (Bankr. S.D.N.Y. Oct. 22, 1990)..........................16

*Johnson v. Jones*,
   515 U.S. 304, 319–20, 115 S. Ct. 2151, 2159 (1995)............................................................13

*Kaminsky v. Rosenblum*,
   929 F.2d 922 (2d Cir. 1991)............................................................................................. *passim*

*Lore v. City of Syracuse*,
   670 F.3d 127, 164 (2d Cir. 2012)...........................................................................................7

*Magnotti v. Kuntz*,
   918 F.2d 364 (2d Cir. 1990)...........................................................................................14, 15

*McCardle v. Haddad*,
   131 F.3d 43 (2d Cir. 1997).........................................................................................9, 11, 17

*In re Metiom, Inc.*,
   318 B.R. 263 (S.D.N.Y. 2004)...............................................................................................12

*Mitchell v. Forsyth*,
   472 U.S. 511, 105 S. Ct. 2806 (1985)................................................................................8, 16

*Mohammed v. Reno*,
   309 F.3d 95 (2d Cir. 2002)....................................................................................................16

*O'Neill v. Town of Babylon*,
   986 F.2d 646 (2d Cir. 1993)........................................................................................5, 13, 21

*Ortiz v. Jordan*,
   562 U.S. 180, 131 S. Ct. 884 (2011).....................................................................................13

*Pearson v. Callahan*,
   555 U.S. 223, 129 S. Ct. 808 (2009).......................................................................................5

*In re Pine Lake Vill. Apartment Co.*,
   21 B.R. 395 (S.D.N.Y. 1982)...........................................................................................4, 21

*Soto v. City of New York*,
   132 F. Supp.3d 424 (E.D.N.Y 2015) ...................................................................................4, 5

*In re Strawberry Square Assocs.*,
   152 B.R. 699 (Bankr. E.D.N.Y. 1993)....................................................................................6

*In re Taub*,
   470 B.R. 273 (E.D.N.Y. 2012) ............................................................................................16

*In re Turner*,
   207 B.R. 373 (B.A.P. 2d Cir. 1997)......................................................................................12

*Walsh v. Mellas*,
   837 F.2d 789 (7th Cir. 1988) ...............................................................................................12

*White v. Frank*,
855 F.2d 956 (2d Cir. 1988).....................................................................................................5

**State Cases**

*Madden ex rel. Madden v. Town of Greene*,
36 Misc. 3d 852, 949 N.Y.S.2d 326 (Sup. Ct. Chenango Co. 2012).................................10, 17

**Federal Statutes**

42 U.S.C. § 1983.......................................................................................................................10

**Rules**

Federal Rules of Bankruptcy Procedure Rule 8007.......................................................................1

Federal Rules of Civil Procedure Rule 8(c).................................................................................9

6847265.2

## INTRODUCTION

Plaintiffs Bethpage Federal Credit Union ("BFCU") and Business Services Group, LLC ("BSG," and, collectively with BFCU, "Plaintiffs"), by their attorneys, Certilman Balin Adler & Hyman, LLP, respectfully submit this memorandum of law in strenuous opposition to the motion (the "Motion"), pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure, of individual defendants Joseph F. Cline ("Cline"), Richard Vacchio ("Vacchio") and Terence "Terry" McNally ("McNally" and, together with Cline and Vacchio, the "Individual Defendants"; and the Individual Defendants, together with all other named defendants, collectively, "Defendants") for an order staying all matters in this adversary proceeding pending determination of the appeal filed by the Individual Defendants. As discussed below, the Individual Defendants' motion cannot succeed for numerous reasons, including that the appeal does not properly lie and is frivolous.

## PRELIMINARY STATEMENT

1.      Plaintiffs commenced this proceeding to recoup its damages incurred as a result of the actions of the Town of Huntington ("Town") and its various employee(s) in "placarding" the Thatched Cottage catering hall (the "Premises").

2.      The decision to placard was made by one or more of the Individual Defendants in ostensible reliance upon materials provided by the former owner of the Premises, Ralph Colamussi, whose father (Joseph Colamussi), sister (Janet Rinker), and sister-in-law (Stacy Colamussi) have all held various positions with the Town. Dkt. No. 80, pp. 31-32. Significantly, the Town's policy of preferential treatment for Ralph Colamussi — to the detriment of similarly-situated property owners in the Town — dates back some thirty years, as evidenced by an internal Town memorandum dated November 2, 1989, produced by the Town at Bates Nos.

1

TOH00630 – TOH00633, in which the then-acting Assistant Town Attorney memorialized that the former owner of Mill Pond, which abuts the Premises, has "waited six (6) years for a building permit, having been subjected to the Planning Board, site plan review, traffic studies, environmental, etc., whereas Mr. Colamussi's son [Ralph Colamussi] is not being subjected to like review." *See* Dkt. No. 105, pp. 1-2.

     3.     Although the Individual Defendants claim "undisputed facts" allegedly establish that their conduct with respect to placarding the Premises was "objectively reasonable" and in full accordance with the Town Code,[1] *see* Dkt. No. 121, pp. 21-28, this Court's determinations in connection with denial of their summary judgment motion, which are supported by the evidence in the Record, yield a contrary conclusion. Specifically, the Court found:

> (a) "the **Individual Defendants decided to placard an already shuttered business based on unverified engineering reports**[,]" *see* Dkt. No. 111, pg. 42;

> (b) nothing in the record demonstrates that the Town had ever voiced any serious safety concerns about the Premises during the years Ralph Colamussi operated the facility, *see* Dkt. No. 111, pg. 5;

> (c) the Town inspected the Premises and issued an Occupancy and Assembly Permit thereupon a **mere three months prior to the placarding** (during Ralph Colamussi's tenure of ownership), **which Permit was signed by Individual Defendants Cline and McNally**, *see* Dkt. No. 111, pg. 5;

> (d) **at no time** prior to the placarding **did the Town provide notice** that the Premises was unfit for occupancy **or seek relief from the automatic stay** imposed by Bankruptcy Rules, *see* Dkt. No. 111, pg. 11;

> (e) the subject placard did not assert a section of the Town Code or identify any other reason for its placement upon the Premises, *see* Dkt. No. 111, pg. 11;

---

[1] Notwithstanding the Individual Defendants' repeated references to purportedly "undisputed facts" herein, *see, e.g.*, Dkt. No. 121, pg. 25 ("The undisputed facts establish that [Individual] Defendant, McNally, did nothing more than discuss placarding Thatched Cottage[.]"), Plaintiffs note that such "facts" are largely disputed, exaggerated, false and/or misleading. Furthermore, Plaintiffs adamantly dispute that such "facts" establish the legal conclusions drawn therefrom by the Individual Defendants in their Motion papers. *See, e.g.*, Dkt. No. 121, pg. 25 ("The undisputed facts establish that Defendants acted reasonably in the decision to placard[.]").

(f) **"[t]he Town**, apparently without regard for its own procedures . . . **proceeded to exercise its own version of self-help**[,]" *see* Dkt. No. 111, pp. 11-12;

(g) evidence submitted in connection with the summary judgment motion indicates that **the Town received an engineering report contradicting the documents furnished by Ralph Colamussi**, but summarily rejected those findings and demanded delivery of an additional report **on the very same day** that the placard was affixed to the Premises, *see* Dkt. No. 111, pp. 13-15 and n. 10-11;

(h) **the placard was maintained upon the Premises** for a period of approximately **17 months "for reasons not apparent to this Court**[,]" *see* Dkt. No. 111, pg. 42;

(i) **procedures established by the Town Code for placarding**, including notice and a hearing, "**were clearly ignored**[,]" *See* Dkt. No. 111, pg. 41;

(j) per Individual Defendant Cline, Town Code **placarding procedures were not followed** because he was "not aware of the specifics of the Town Code[,]" *see* Dkt. No. 111, pg. 42

(k) per Individual Defendant Vacchio, "**the procedure** [prior to posting a placard] **has been sketchy at best**[,]" *see* Dkt. No. 111, pg. 29; and

(l) during depositions conducted herein, "**almost all of the [placarding] practices** described by the Town employees **were directly contrary to the Town Code**[,]" *see* Dkt. No. 111, pg. 29.

(Emphases added.)

4.      Notwithstanding the foregoing, the Individual Defendants have appealed this Court's denial of summary judgment — solely with respect to the issue of their alleged entitlement to qualified immunity, so as to avoid personal liability for any judgment that may be awarded to Plaintiffs herein — and seek a stay pending disposition of their appeal.[2]

5.      The arguments supporting the Motion utterly lack merit and should be rejected as largely inconsistent with the law of the case and applicable authority. Furthermore, and contrary to their bald contentions herein, the Individual Defendants have utterly failed to meet their heavy

---

[2] It is submitted that counsel for the Town and the Individual Defendants is motivated to make this frivolous appeal by the daunting prospect of the Individual Defendants being found liable for punitive damages, which are sought by Plaintiffs herein for Defendants' outrageous and unlawful conduct.

6847265.2

burden of proving entitlement to such extraordinary relief. *See*, e.g., *In re Pine Lake Vill. Apartment Co.,* 21 B.R. 395, 398 (S.D.N.Y. 1982) ("A stay involves extraordinary relief and the discretion of the court."); *and In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 659 (S.D.N.Y. 2005) ("A party seeking a stay pending appeal carries a heavy burden.").

6.       In any event, as discussed more fully *infra*, the stay requested by the Individual Defendants is wholly inappropriate, given that **the District Court lacks jurisdiction to hear their appeal** on the issue of qualified immunity because it turns on highly disputed issues of fact that must be resolved at trial.

## ARGUMENT

### THE INDIVIDUAL DEFENDANTS' APPEAL DOES NOT DEPRIVE THE COURT OF JURISDICTION TO RESOLVE THIS DISPUTE ON THE MERITS

7.       The Individual Defendants' primary argument in support of granting a stay herein is that this Court lacks jurisdiction to try this case while their appeal is pending. *See* Dkt. No. 121, pp. 5-9. The Individual Defendants are wrong. They misconstrue applicable precedent in this regard, and further, erroneously claim that their appeal — on the sole issue of qualified immunity — will be dispositive of the entirety of this dispute. *See* Dkt. No. 121, pg. 9 ("And if the District Court finds that the Individual Defendants did not violate Plaintiffs' rights, the Town will also be entitled to dismissal of Plaintiffs' claims because the Town acted exclusively through the Individual Defendants.").

8.       In support of this specious claim, the Individual Defendants rely upon *Soto v. City of New York*, 132 F. Supp.3d 424, 459 (E.D.N.Y 2015), and proffer that *Soto* stands for the proposition that a municipality is relieved of liability where its employees are entitled to qualified immunity. However, the holding in *Soto* merely stands for the self-evident proposition

4

that a municipality cannot be held liable for a constitutional violation where the Constitution has not been violated. *Id.* at 459.

9.    It is beyond cavil that the doctrine of qualified immunity applies to government officials, not the government itself, and only shields against the imposition of personal liability, not liability that may be imposed upon the government. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808 (2009); *Harlow*, 457 U.S. at 818, 102 S. Ct. at 2727. Accordingly, the arguments flowing from the Individual Defendants' misconstruction of applicable case law should be rejected.

## THE DISTRICT COURT CANNOT HEAR THE APPEAL

10.    Moreover, if the jurisdiction of any court is in question here, it is that of the District Court to hear the instant appeal. *To wit*, as the Second Circuit has explained, appellate jurisdiction "is limited to circumstances where the qualified immunity defense may be established as a matter of law and is **not available** where the immunity issue turns on **disputed questions of fact**. Indeed, **we lack jurisdiction when the determination of material factual issues is a necessary predicate to a resolution of whether qualified immunity is a bar to the litigation**." *O'Neill v. Town of Babylon*, 986 F.2d 646, 649 (2d Cir. 1993) (emphasis added) (internal quotations and citations omitted); *see also White v. Frank*, 855 F.2d 956, 962 (2d Cir. 1988) (appeal from summary judgment denying qualified immunity defense dismissed on ground that court lacked jurisdiction because factual findings were necessary to resolve issue as a matter of law).

11.    In view of this Court's recognition that, *inter alia*, "**material facts** in this case [] **call into question the Individual Defendants' motive and intent**" in placing the placard at the Thatched Cottage[,]"Dkt. No. 111, pg. 52; "whether the Individual Defendants followed proper

5

6847265.2

procedure **is a material fact in dispute**[,]"Dkt. No. 111, pg. 51; "[t]he facts of this case . . . **cry out for a trial on the merits where the credibility of witnesses can be weighed by the trier of fact**[,]" Dkt. No. 111, pg. 52; and "the **memory lapses of the Town employees** when dealing with these **critical facts causes the Court concern**." Dkt. No. 111, pg. 11, (emphases added), it is respectfully submitted that the determination of material factual issues is a necessary prerequisite to resolution of the Individual Defendants' appeal. Suffice it to say, despite the Individual Defendants' repetitive citation to "undisputed facts," there are essentially no material facts in this proceeding that are not seriously disputed. Therefore, it is the District Court, and not this Court, that lacks adequate jurisdiction at this stage of the proceeding.

12.    Although the filing of an appeal divests a bankruptcy court's jurisdiction over the specific issue(s) on appeal, such appeal does **not** deprive the court of jurisdiction over all other aspects of the case because "[d]oing so would freeze the case at the procedural posture reached when the appeal was filed, and would inure unjustly to the benefit of any party whose interests were furthered by delay." *In re Strawberry Square Assocs.*, 152 B.R. 699, 702 (Bankr. E.D.N.Y. 1993).

13.    A freeze in the procedural posture of this proceeding would be particularly unjust because "**qualified immunity is generally considered separate and apart from the merits of the case**, even though plaintiff's factual allegations must be examined[.]" *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991).

14.    The thrust of the Individual Defendants' appeal is that they are entitled to qualified immunity herein as a matter of law notwithstanding any liability that may be imposed upon the Town, because, they argue, their actions were, *inter alia*, "objectively reasonable." *See* Dkt. No. 121, pp. 23-28. Even assuming *arguendo* that the Individual Defendants prevail in their

6

appeal (which is both procedurally and substantively defective), the ensuing determination would not in any way relieve the Town from liability, but would instead provide only that the Individual Defendants cannot be held personally liable in their individual capacities. *See, e.g.*, *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("[M]unicipalities have no immunity defense, either qualified or absolute, in a suit under §1983. Thus, with respect to an official-capacity claim, qualified immunity is simply not a defense.") (quotations omitted).

15.   Furthermore, this Court retains jurisdiction during the pendency of an appeal, where: (i) the matter is not related to the issues involved in the appeal; (ii) the appeal is clearly frivolous; and/or (3) the Court's actions would aid in the appeal. *See 9 Moore's Fed. Prac.,* ¶ 203.11, p. 3–45 to 3–55 (2d ed. 1992).

16.   Analyzing and applying the factors above, the trial of this proceeding should clearly go forward. Applying point (i), *supra*, to the facts at bar, this Court retains jurisdiction to proceed because any appellate determination immunizing the Individual Defendants from liability will have no bearing upon an on-the-merits resolution of Plaintiffs' causes of action, except as to the enforceability of any monetary judgment Plaintiffs may secure against them personally. *See Lore*, 670 F.3d at 164; *and Kaminsky*, 929 F.2d at 925.

17.   With respect to point (ii), the decision in *Bean v. City of Buffalo*, 822 F. Supp. 1016 (W.D.N.Y. 1993) supports this Court's continuation of jurisdiction. In *Bean*, the trial court determined that "defendants' entitlement to the defense of qualified immunity **so clearly depends upon the resolution of material issues of fact** . . . this Court holds that the notices of appeal are **frivolous**, and that they **do not invoke appellate jurisdiction**." *Id.* at 1019 (emphasis added); *see also id.* at 1018 ("[D]enial of summary judgment on the issue of qualified immunity is **not** an appealable order . . . where the denial was premised upon the existence of factual

7

issues.") (emphasis added). Similarly here, this Court determined that the Individual Defendants'

immunity claim **so clearly depends on resolution of material facts in dispute** that it cannot be

decided as a matter of law. *See* Dkt. 111, pg. 51. Because this Court's denial was premised upon

the existence of factual issues, the decision is not appealable. *Kaminsky*, 929 F.2d at 926; *see*

*also Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985) (holding denial of

summary judgment on issue of qualified immunity is only appealable "to the extent it turns on an

issue of law"). Therefore, much like the appeal of the municipal defendants in *Bean*, **the**

**Individual Defendants' appeal is frivolous** and does not invoke the District Court's appellate

jurisdiction.

18.     Notably, the appeal is also frivolous to the extent the Individual Defendants claim

that issues not raised therein will be resolved thereby, *see, e.g.*, Dkt. No. 121, pg. 21 ("On the

Appeal, the District Court will determine whether Plaintiffs' Section 1983 Claims against the

Individual Defendants should have been dismissed for failure to seek post-deprivation remedies

before commencing suit"); *and* Dkt. No. 121, pg. 12 ("On the Appeal, the District Court will

review this Court's conflicting decisions on Plaintiffs' standing"). As the Individual Defendants'

appeal will not serve as a panacea for already-rejected arguments herein, their claims to the

contrary in favor of a stay, which are barred by, *inter alia,* the law of the case doctrine, should be

rejected as frivolous.

19.     Lastly, regarding point (iii), the Court retains jurisdiction to try this case on the

merits, and such trial is eminently appropriate, because evaluation of the Individual Defendants'

qualified immunity defense requires resolution of disputed factual issues, *see* Dkt. No. 80.

Therefore, this Court's fact finding at trial will undoubtedly aid in the appeal (should it lie). *See*

*DiMarco v. Rome Hosp. & Murphy Mem'l Hosp.*, 952 F.2d 661, 665 (2d Cir. 1992) ("If

8

resolution of the immunity defense depends upon disputed factual issues, or upon mixed questions of fact and law, **an immediate appeal will not lie**, and review of the qualified immunity determination **will have to await the [] court's resolution of the factual questions**.") (emphasis added).

20.    Given that the sole issue on appeal is evaluated "separate and apart from the merits[,]" *Kaminsky*, 929 F.2d at 925, and because, *inter alia*, this Court's factual findings will more readily facilitate the District Court's determination of whether or not the Individual Defendants' conduct was objectively reasonable (thereby aiding resolution of their appeal), it is respectfully submitted that a stay of this proceeding would be wholly inappropriate, particularly, where, as here, the appeal is frivolous.

## THE ISSUE OF QUALIFIED IMMUNITY SHOULD BE DEEMED WAIVED BECAUSE THE INDIVIDUAL DEFENDANTS FAILED TO PLEAD IT

21.    Notwithstanding the foregoing, the Individual Defendants' appeal cannot lie because the affirmative defense of qualified immunity was not pled. "Qualified or 'good faith' immunity is an affirmative defense that **must** be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S. Ct. 2727 (1982) (emphasis added) (*citing Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920 (1980)). As an affirmative defense, the doctrine of qualified immunity must be specifically pled in accordance with Rule 8(c) of the Federal Rules of Civil Procedure, at the peril of waiving the issue. *See Gomez v. Toledo*, 446 U.S. at 640, 100 S.Ct. at 1924, 64 L.Ed.2d 572 (*citing* Fed. R. Civ. P. 8(c)). Indeed, "[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (internal citations omitted).

22.    The Individual Defendants failed to plead the affirmative defense of qualified immunity herein; hence, such alleged defense was waived. In point of fact, the only reference to

"immunity" was contained in the Fourth Affirmative Defense of their Amended Answer, which stated: "Defendants have no liability for the claims asserted in the Complaint based upon the doctrine of **absolute immunity**." Dkt. No. 37, pg. 22 (emphasis added). However, absolute immunity is a distinct legal doctrine bearing little or no connection to the rationale or analysis attendant to the doctrine of qualified immunity. *See, e.g., Madden ex rel. Madden v. Town of Greene*, 36 Misc. 3d 852, 859, 949 N.Y.S.2d 326, 332 (Sup. Ct. Chenango Co. 2012) (internal citations omitted) ("**Qualified immunity is based on an entirely different rationale than absolute immunity**, namely, judicial deference to the expertise of coordinate branches of government") (emphasis added). Specifically, absolute or general immunity is a common law doctrine conferring total immunity to government officials acting within the scope of their duties, whereas qualified immunity shields government officials from claims concerning discretionary actions that are objectively reasonable and/or do not violate "clearly established" legal or constitutional rights.

23.    Indeed, the Individual Defendants' motion papers continue to allege facts supporting a defense of absolute immunity – *i.e.,* that they acted within the scope of their duties and fully complied with non-discretionary Town procedures, *see, e.g.,* Dkt No. 121, pp. 20-21 – while at the same time attempting to transform their absolute immunity defense into a qualified immunity defense, which pertains to discretionary conduct.

24.    To illustrate the waiver, in *Blissett v. Coughlin*, 66 F.3d 531 (2d Cir. 1995), proves instructive. In *Blissett*, public employees pled general (absolute) immunity in defense of a civil rights action pursuant to 42 U.S.C. §1983. In view of the employees' failure to specifically assert and adequately develop the defense of qualified immunity, the Second Circuit determined that the issue had been waived. *Id.* at 539.

10

25.     Furthermore, although the defendants-appellants in *Blissett* pled, as an affirmative defense, that their actions "resulted from their good faith and reasonable belief that those acts . . . would not violate any of plaintiff's federally protected rights[,]" *id.* at 538, n. 1, which defense appears to implicate the doctrine of qualified immunity, because the defendants-appellants "never articulated a qualified immunity defense distinct from their contention — the heart of their defense throughout these proceedings— that no constitutional violation occurred[,]" the Second Circuit ruled that the *Blissett* defendants-appellants "still failed to raise it apart from their defense on the merits." *Id.* at 539 (internal quotations omitted). Similarly, here, notwithstanding the Individual Defendants' articulation of certain aspects relating generally to the issue of "immunity" in the course of these proceedings, the heart of their defense is that no constitutional violation ever occurred. *See, e.g.*, Dkt. No. 121, pg. 15 ("There is no evidence to support any allegation that any of the Individuals Defendants took any action to harm or violate any of Plaintiffs' rights (constitutional or otherwise).").   Thus, as in *Blissett*, any such qualified immunity defense was long ago waived.

26.     Notably, the Individual Defendants' case is far weaker than that of the employees in *Blissett*, in that the Individual Defendants failed to allege **any** affirmative defense appearing to implicate the doctrine of qualified immunity. *See generally* Dkt. No. 121, pp. 15-17. As the Individual Defendants' defense herein suffers from many of the same infirmities as that of the defendants-appellants in *Blissett*, the issue of qualified immunity was undoubtedly waived.

27.     Significantly, the holding in *Blissett* does not stand in isolation. *See, e.g.*, *McCardle v. Haddad*, 131 F.3d at 51. Indeed, even where a government official raises the affirmative defense of qualified immunity in his or her answer, but then fails to adequately develop supporting argument therefor, appellate courts have deemed the issue to be waived. *See*

11

*Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir. 1988) ("The cases holding that an omission of this character constitutes a waiver of the right to present that issue on appeal are legion.")

28.    Given that the Individual Defendants completely failed to avail themselves of a qualified immunity defense herein, **and instead asserted only the common law defense of absolute immunity**, it is respectfully submitted that the sole issue on appeal has been waived, and so, the Individual Defendants' application for a stay pending disposition of the appeal should be denied for this additional reason.

## THE INDIVIDUAL DEFENDANTS ARE NOT ENTITLED TO A STAY PURSUANT TO THE SECOND CIRCUIT'S FOUR-FACTOR ANALYSIS

29.    As enunciated in *Hirschfeld v. Bd. of Elections in City of New York*, 984 F.2d 35 (2d Cir. 1993), in this Circuit, four factors are considered in connection with a motion to stay proceedings pending an appeal: (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated a substantial possibility of success on appeal; and (4) the public interests that may be affected." *Id.* at 39.

30.    Although the Second Circuit's approach may be more akin to a balancing test than a rigid rule of law, *In re Adelphia Commc'ns Corp.* 361 B.R. 337, 347 (S.D.N.Y. 2007), courts in this Circuit have frequently held that a movant's **failure to satisfy any one of the foregoing factors is fatal** to the motion for a stay. *See, e.g., In re Metiom, Inc.*, 318 B.R. 263, 271 (S.D.N.Y. 2004) ("[M]ovant's failure to satisfy one prong of the standard for granting a stay pending appeal [of a bankruptcy court order] dooms the motion") (internal quotations omitted); *Green Point Bank v. Treston*, 188 B.R. 9, 12 (S.D.N.Y. 1995); *In re Deep*, 288 B.R. 27, 30 (N.D.N.Y. 2003); *In re Turner*, 207 B.R. 373, 375 (B.A.P. 2d Cir. 1997); *and In re Bijan-Sara Corp.*, 203 B.R. 358, 360 (B.A.P. 2d Cir. 1996).

12

31.     As discussed *infra*, the Individual Defendants do not meet their **heavy burden** of establishing entitlement to a stay herein (as their appeal does not lie), *In re Adelphia Commc'ns Corp.*, 333 B.R. at 659, and it is respectfully submitted that, even assuming the more lenient balancing standard applies, the applicable factors weigh decidedly in favor of denying the Individual Defendants' motion.

### A. The Individual Defendants Will Suffer No Irreparable Injury Absent a Stay

32.     The Individual Defendants' singular argument in connection with the "irreparable injury" prong should be deemed inaccurate hyperbole at best, or, more appropriately, as an obvious and transparent falsehood. Specifically, they claim that: "Forcing the Individual Defendants to move forward with their defense in this Proceeding before their Appeal is determined would <u>irrevocably deprive them of their right to assert immunity defenses and of their well-established right to appeal a denial of those immunities</u>." Dkt. No. 121, pg. 10.

33.     However, as the United States Supreme Court has repeatedly explained: "A qualified immunity defense, of course, does not vanish when a [trial] court declines to rule on the plea summarily." *Ortiz v. Jordan*, 562 U.S. 180, 184, 131 S. Ct. 884, 889 (2011); *see also O'Neill*, 986 F.2d at 649 (explaining that, in any event, where determination of **entitlement to qualified immunity turns on disputed questions of fact, such factual issues must be resolved at trial prior to hearing the issue on appeal**); *and Johnson v. Jones*, 515 U.S. 304, 319–20, 115 S. Ct. 2151, 2159 (1995) (holding government employee may not appeal denial of summary judgment on qualified immunity defense insofar as such denial determines that the pretrial record sets forth "genuine" questions of fact for trial).

34.     Accordingly, and notwithstanding their claims to the contrary, denial of a stay herein would **not** "irrevocably deprive" the Individual Defendants of their right to an appeal on

13

the issue of qualified immunity. Instead, appellate review will merely be postponed, which postponement is entirely appropriate in view of the highly material, disputed questions of fact that must be resolved as a predicate to determining whether the Individual Defendants' conduct herein was, *inter alia*, "objectively reasonable." *Compare* Dkt. No. 111, pp. 52, where this Court stated: "The facts of this case as presented in the motion for summary judgment **cry out for a trial on the merits** where the credibility of witnesses can be weighed by the trier of fact" (emphasis added); with *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir. 1990) ("Appellate jurisdiction over this area, however, is not without limitations. We may assess . . . denial of a qualified immunity claim only to the extent it turns on issues of law. **If a factual determination is a necessary predicate to the resolution of the suit, we must postpone review**.") (emphasis added) (internal citation omitted).

### B. Plaintiffs Will Suffer Substantial Injury If a Stay is Issued

35.    While the Individual Defendants must establish that irreparable injury would result absent issuance of a stay pending their appeal, Plaintiffs need only show that substantial injury would result if a stay is issued. *Hirschfeld*, 984 F.2d at 39. As discussed more fully, *infra*, Plaintiffs satisfy this prong of the Second Circuit's analysis; therefore, staying these proceedings pending disposition of the Individual Defendants' meritless motion would be most inappropriate, particularly in view of Defendants' prior delay tactics herein.

36.    Significantly, **more than three years** have passed since Defendants initially removed this matter from the New York Supreme Court on March 11, 2016. *See* Dkt. No. 1. During that time, Defendants filed a motion to dismiss, *see* Dkt. No. 26, which was denied, *see* Dkt. No. 34. Defendants then moved for a withdrawal of reference, ostensibly in order to reargue their motion to dismiss before the District Court, *see* Dkt. No. 41. After this procedural stratagem

14

failed, Defendants shifted their focus to avoidance of reasonable cooperation in discovery, *see* Dkt. No. 49. After forcing Plaintiffs to engage in needless motion practice with respect to document and witness production herein, Defendants appear to have purposefully delayed this proceeding by filing a motion for summary judgment, *see* Dkt. No. 66, which they should have known was in no way viable due to the substantial volume of material facts in dispute, *see* Dkt. No. 80.

37.     With Defendants' summary judgment motion having been denied *in toto*, *see* Dkt. No. 111, the Individual Defendants now seek to again delay the orderly administration of justice by appealing the issue of qualified immunity notwithstanding that, *inter alia*, the issue of qualified immunity was not raised in the Amended Answer, *see* Dkt. No. 37, and, in any event, the issue is non-appealable because it turns upon material questions of fact that must be resolved at the very trial the Individual Defendants seek to postpone. *See, e.g.*, *Magnotti*, 918 F.2d at 367.

38.     Plaintiffs should not be forced to bear any further delays in conducting a trial on the merits, which delays, in addition to exacerbating their financial injuries, have also substantially and adversely affected their ability to conduct a proper accounting of their bookable assets and a reconciliation of their losses herein.

39.     The Individual Defendants' argument respecting this prong of the Second Circuit's analysis is that waiting for resolution of their appeal will cause no injury to Plaintiffs because their damages "are minimal, if non-existent." *See* Dkt. No. 121, pg. 11. However, this cursory speculation is inappropriate, not only to the extent that the Individual Defendants have overlooked, *inter alia*, the numerous carrying costs and marketing expenses Plaintiffs were forced to incur as a result of Defendants' conduct (*e.g.*, by the Defendants' placard having been

15

improperly maintained at the Premises for some 17 months), but also because they ignore injuries that Plaintiffs continue to suffer while this dispute remains unresolved.

40.    In view of the foregoing, and the axiomatic principle that "justice delayed is justice denied[,]" *see, e.g.*, *In re Integrated Res., Inc.*, No. 90-B-10411 (CB), 1990 WL 325414, at *1 (Bankr. S.D.N.Y. Oct. 22, 1990), it is respectfully submitted that Plaintiffs will suffer substantial injury should the Individual Defendants be permitted to further delay a trial on the merits herein.

### C. The Individual Defendants Have Little to No Possibility of Success on Appeal

41.    "The single most important factor [of the Second Circuit's four-factor analysis] is likelihood of success on the merits." *In re Taub*, 470 B.R. 273, 278 (E.D.N.Y. 2012). The showing required in connection with likelihood of success is inversely proportional to the irreparable injury suffered absent a stay. *Mohammed v. Reno,* 309 F.3d 95, 101 (2d Cir. 2002). That is, where a party moving for a stay pending appeal demonstrates a less-than-adequate showing of irreparable harm, it must **clearly** establish a substantial possibility of success on appeal. *In re Taub*, 470 B.R. at 278. The Individual Defendants have unquestionably failed to clearly establish a substantial possibility of success on the merits of their appeal, and so, their motion is subject to denial on this basis alone.

42.    As discussed *supra*, the Individual Defendants cannot succeed on their appeal because **the District Court lacks jurisdiction** to hear it at this stage in the litigation. *See, e.g., Mitchell*, 472 U.S. at 530, 105 S. Ct. at 2817, 86 L. Ed. 2d at 411. *To wit*, an interlocutory appeal on the issue of qualified immunity does **not** lie where, as here, factual issues exist regarding the nature of the defendant's actions, *Bean*, 822 F. Supp. at 1018; *Kaminsky*, 929 F.2d at 925-26; *see*

16

*also* Dkt. No. 111, pg. 51 (declining to grant summary judgment on immunity claim because "whether the Individual Defendants followed proper procedure is a material fact in dispute").

43.    Furthermore, even assuming *arguendo* that the District Court were vested with jurisdiction to hear the Individual Defendants' appeal at this stage in the proceeding, as discussed *supra,* the appeal still fails because the Individual Defendants waived the defense of qualified immunity, *see* Dkt. No. 37, pg. 22. *See, e.g., Madden*, 36 Misc. 3d at 859, 949 N.Y.S.2d at 332. Accordingly, the Individual Defendants have waived the sole issue on appeal; therefore, they cannot demonstrate any likelihood of success with respect thereto. *See McCardle*, 131 F.3d at 51 ("The qualified immunity defense can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity.").

44.    Substantively, the Motion papers themselves evidence that the Individual Defendants lack any reasonable probability of success on the merits of their appeal. Specifically, therein, the Individual Defendants discuss at length why — **under their unsupported version of the "facts"** — they should be entitled to qualified immunity. *See* Dkt. No. 121, pp. 12-28. However, the Individual Defendants have utterly failed to show that they would be entitled to qualified immunity under either this Court's or Plaintiffs' version of the facts. Thus, the Individual Defendants have made no showing of entitlement to qualified immunity as a matter of law. Such a showing is patently insufficient to satisfy the "likelihood of success" prong of the Second Circuit's analysis. *See, e.g.*, *Bean*, 822 F. Supp. at 1018 ("At no time did any defendant in the present case argue that, even under the *plaintiff's* version of the facts, they are entitled to qualified immunity. Defendants simply argued that they were entitled to qualified immunity under their version of the facts[.]") (emphasis in original).

17

45.    In another way, the Motion papers further evidence that the Individual Defendants lack any reasonable probability of success on the merits of their appeal. *To wit*, the Individual Defendants' argument is riddled with purportedly "undisputed facts" herein, and those "facts" form the basis of their claim to qualified immunity, *see, e.g.*, Dkt. No. 121, pp. 16-17, notwithstanding that Plaintiffs vehemently disagree that the purported "facts" are undisputed. The Court may take notice that approximately 17 pages of the Individual Defendants' 29-page brief is devoted to their wholly unsubstantiated "facts" as a basis for their appeal. *See* Dkt. No. 121, pp. 12-28. Given that the Individual Defendants' own papers undercut their claim that they possess a substantial likelihood of success on the merits as a matter of law, the Motion for a stay pending said appeal cannot stand.

46.    Plaintiffs address some of the most outrageous of the Individual Defendants' "factual" allegations in putative support of their motion below.

47.    Notably, the Individual Defendants improperly raise issues and matters *dehors* the Record as reflected in Plaintiffs-Appellees' Counter-Designation of Record on Appeal and Counter-Statement of Issues on Appeal. *See* Dkt. No. 129. For example, the Individual Defendants claim that "On Appeal the District Court will review this Court's conflicting decisions on Plaintiffs' standing[.]" *See* Dkt. No. 121, pg. 12. Simply, there are no "conflicting decisions" to review. *See* Dkt. No. 113. The Individual Defendants' argument is absurd because Plaintiffs held title to the Premises for some 15 of the 17 months in which the subject placard was in place and this Court has already found as a matter of law "that the Plaintiffs had a protectible property interest in the [Premises] at the time of placarding." Dkt. No. 111, pg. 34; *see also* Dkt. No. 111, pg. 44 ("The Court finds, as a matter of law, that Plaintiffs were third-party beneficiaries of the [bankruptcy auction high bidder's] sale contract."). Thus, the

18

Individual Defendants' arguments in this regard are of no moment to the requisite showing of a likelihood of success on appeal.

48.     The Individual Defendants argue that this Court wrongly concluded that the subject placard was posted in reaction to "an emergency situation." *See* Dkt. No. 121, pp. 17-20. Specifically, they claim, the placard was not posted pursuant to an "emergency," and so, the Individual Defendants were not required to comply with Section 124-61 of the Town Code, which would have otherwise obligated them to furnish a post-deprivation notice and an opportunity to appeal the determination to placard. *See* Dkt. No. 121, pp. 17-18; *see also* HUNTINGTON TOWN CODE, Art. XI, § 124-61 Emergencies.

49.     However, the Individual Defendants' argument is a "red herring" because, if the subject placard was **not** posted pursuant to an emergency, the Town Code (and the United States Constitution) required them to provide **pre-deprivation** notice, an opportunity to remediate, and a hearing. *See* HUNTINGTON TOWN CODE, Art. XI, §§ 124-57 – 124-59; *see generally* 1 STATE AND LOCAL GOVERNMENT CIVIL RIGHTS LIABILITY § 1:18 Constitutional violations—Procedural due process.

50.     Given that this Court has already found that procedures for providing notice and a hearing "were clearly ignored[,]" Dkt. No. 111, pg. 41, it matters not, for the purposes hereof, whether the Individual Defendants were operating under the Town's standard procedure for placarding or pursuant to an emergency; the Individual Defendants simply failed to comply in any respect with the Town Code in either instance.

51.     Ironically, the Individual Defendants' argument that the subject placard was not posted on the basis of an emergency serves only to heighten their constitutional obligations herein, not reduce them. Therefore, their claim that "the Court's application of the emergency

provisions of the Town Code was erroneous[,]" Dkt. No. 121, pg. 17, only serves to further diminish their likelihood of success on appeal.

52.     The balance of the Individual Defendants' arguments respecting the "likelihood of success" prong either again purport to improperly raise issues not on appeal, *see* Dkt. No. 121, pg. 21 (concerning Article 78 proceedings); *and* Dkt. No. 121, pg. 21-23 (concerning standing), or otherwise consist of entirely conclusory quasi-legal and factual determinations, *see, e.g.*, Dkt. No. 121, pg. 22. As such, their arguments are inapposite to this Court's assessment of their likelihood of success on appeal. Accordingly, the Individual Defendants have failed to establish that they have any reasonable probability of success on appeal, let alone a substantial possibility thereof.

### D. No Compelling Governmental Interest Supports Granting a Stay

53.     In connection with the final prong of the Second Circuit's analysis, the Individual Defendants primarily contend that their claims of irreparable harm and likelihood of success on appeal are a sufficient showing. However, Plaintiffs respectfully submit that the Individual Defendants' mere reference to other discrete factors of the Second Circuit's analysis is wholly insufficient to evidence a compelling public interest herein.

54.     The Individual Defendants also argue that "avoiding excessive municipal costs" and "conserving judicial resources" bode in favor of a stay. *See* Dkt. No. 121, pg. 29. It is submitted that, if Defendants were truly concerned about saving taxpayer money, they would have immediately moved to remedy the untenable and unlawful placement of the placard instead of maintaining it for 17 months and litigating this case for over three years.

55.     The Individual Defendants obviously overlook that their appeal on the issue of qualified immunity turns upon factual questions that can only be resolved at the very trial they

seek to stay. *See, e.g.*, *O'Neill*, 986 F.2d at 649 (holding appellate court lacks jurisdiction where the issue of immunity turns on disputed questions of fact). Therefore, their continuation of a meritless appeal only wastes judicial resources and increases municipal costs. In any event, Defendants' prior delay tactics undercut the Individual Defendants' disingenuous claim that they seek to postpone a trial herein out of some recent concern for municipal taxpayers and court resources. This reason is pretextual and belied by the facts.

56.    Given that a stay of this proceeding would constitute "extraordinary relief," *In re Pine Lake Vill. Apartment Co.,* 21 B.R. at 398, "[s]tays pending an appeal from Bankruptcy Court should only be granted in limited circumstances[,]" *In re Baker*, No. 1-01-24227(DEM), 2005 WL 2105802, at *3 (E.D.N.Y. Aug. 31, 2005) (citing *In re Gucci,* 105 F.3d 837, 840 (2d Cir.1997)), and this proceeding in no way constitutes a limited circumstance in which a stay would be appropriate, Plaintiffs respectfully submit that public policy squarely favors denial of the Motion.

## CONCLUSION

57.    Accordingly, because, *inter alia*: (i) the District Court lacks jurisdiction to hear an appeal on the issue of qualified immunity until disputed facts are resolved; (ii) the Individual Defendants have, in any event, waived the sole issue on appeal; and (iii) the Individual Defendants failed to meet their heavy burden of clearly showing entitlement to a stay under the Second Circuit's four-part analysis, the Motion should be denied, with costs to Plaintiffs for the frivolous nature of this Motion.

**WHEREFORE**, Plaintiffs respectfully request that this Court deny the Individual Defendants' motion for a stay of this proceeding and grant such other, further and different relief as the Court deems just and proper, including costs to Plaintiffs.

6847265.2

Dated: East Meadow, New York
      May 20, 2019

                    **CERTILMAN BALIN ADLER & HYMAN, LLP**
                    *Attorneys for Appellees Bethpage Federal Credit*
                    *Union and Business Services Group, LLC*

                By:    /s/ Richard J. McCord
                        Richard J. McCord
                        90 Merrick Avenue
                        East Meadow, New York, 11554
                        (516) 296-7000
                        rmccord@certilmanbalin.com

22

6847265.2