UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re
JOE'S FRIENDLY SERVICE & SON, INC.,
d/b/a THATCHED COTTAGE AT THE BAY,

                            Chapter 7
                            Case No. 8-14-70001-reg

                Debtor.
------------------------------------------------------------x
In re
THATCHED COTTAGE LP,

                            Chapter 7
                            Case No. 8-14-70002-reg
                            (Jointly Administered)

                Debtor.
------------------------------------------------------------x
BETHPAGE FEDERAL CREDIT UNION and
BUSINESS SERVICES GROUP, LLC,

                Plaintiffs,

     -against-

                            Adv. Pro. No. 8-16-8035-reg
THE TOWN OF HUNTINGTON,
JOSEPH F. CLINE, INDIVIDUALLY,
RICHARD VACCHIO, INDIVIDIUALLY, and
TERENCE "TERRY" MCNALLY, INDIVIDUALLY,

                Defendants.
------------------------------------------------------------x

## <u>Decision</u>

      Before the Court is the defendants' motion for a determination that this Court lacks

subject matter jurisdiction over this adversary proceeding filed by non-debtors Bethpage Federal

Credit Union ("BFCU") and Business Services Group, LLC ("BSG") (together, the "Plaintiffs")

against non-debtors the Town of Huntington (the "Town"), Joseph F. Cline, individually

("Cline"), Richard Vacchio, individually ("Vacchio"), and Terence "Terry" McNally,

individually ("McNally") (collectively, the "Defendants"). The Debtors, Joe's Friendly Service

& Son, Inc., d/b/a Thatched Cottage at the Bay ("Joe's Friendly") and Thatched Cottage LP ("Thatched LP") (collectively, the "Debtors"), are not parties to this adversary proceeding.

On September 24, 2014, pursuant to an Order of this Court, the chapter 7 trustee of the Debtors' jointly administered estates conducted an auction sale of substantially all the Debtors' assets under section 363 of the Bankruptcy Code (the "Code"). These assets consisted of real property and an accompanying well-known catering hall located in Centerport, NY. Pursuant to the terms of this sale, and as a result of the failure of the successful bidder to close on the purchase, the Plaintiffs as the backup bidder, were required to purchase the property from the estate. The Plaintiffs assert the Defendants' "placarding" (i.e., condemnation) of the catering hall building in the midst of the sale process was a primary cause of the winning bidder's decision to default on his contractual obligation and that this resulted in the Plaintiffs economic loss and other damages. The Plaintiffs assert that the Defendants did not follow proper procedures when placarding the building and allege due process and equal protection violations, negligence, and various other state tort claims. The Plaintiffs allege the Defendants conspired with the Debtors' principal to make the property economically unattractive to potential buyers which caused material harm to the Debtors' creditors and that these actions by the Defendants were done in violation of the Bankruptcy laws and in violation this Court's order mandating a sale of the property to the highest bidder.

The Plaintiffs chose the state court as its forum to assert these claims alleging damages in connection with the placarding of the building. It was the Defendants who removed the subject action to this Court and asserted that this Court has subject matter jurisdiction over the lawsuit and should exercise that jurisdiction. The Plaintiffs, having selected the state court to litigate these claims, moved to remand the action. However, the parties reached an agreement by which

2

they stipulated to have this matter heard before this Court and memorialized the agreement in a stipulation which was so-ordered by this Court on July 11, 2016. As per the stipulation, the Plaintiffs withdrew their motion to remand and submitted to the entry of final orders by this Court. Despite having removed this action to this Court and despite having entered into the July 11, 2016 so-ordered stipulation, which is a final non-appealable order of this Court, the Defendants filed an answer to the amended complaint on December 27, 2016 contesting this Court's jurisdiction to hear this matter.[1] This Court's lack of subject matter jurisdiction was most recently raised by Defendants' motion, dated December 17, 2019 [ECF No. 164] ("Motion"). The Court denied that Motion at the commencement of trial on January 13, 2020 and indicated that this written decision would follow.

The Defendants' Motion suffers from a litany of infirmities. First, it is the Defendants themselves who argued that this Court has subject matter jurisdiction over this lawsuit; the Plaintiffs wanted to be in state court. The representations in the Defendants' current motion are in direct conflict with prior representations that the Defendants made to ensure removal of this proceeding from state court. Second, by so-ordering the stipulation which caused the Plaintiffs to withdraw their motion to remand and submit to this Court's final orders, the Court necessarily found that it had subject matter jurisdiction over the dispute. That order is now final and non-appealable. Finally, the Defendants cite no change in fact or law to support or justify their change in position. In essence, the Defendants denied the Plaintiffs their desired forum and induced them to accept the change based on representations that the Defendants now seek to

---

[1]      The Defendants retained new counsel on October 4, 2016 which may explain the apparent change in litigation strategy.

disavow. There is no tenable justification for the change in position other than Defendants' change in legal counsel subsequent to the date of the so-ordered stipulation.

The Court will not permit the Defendants to now argue that this Court lacks subject matter jurisdiction where this action was brought to this Court by the Defendants themselves; the Defendants represented that this Court has subject matter jurisdiction over this matter; the Plaintiffs relied on Defendants representations and their agreement to have this Court issue final orders in connection with this case; and this issue was previously determined by a so-ordered stipulation of the parties which has not been appealed.

Even so, examined on the merits, the Court finds that it has subject matter jurisdiction over this matter. Where a proceeding between non-debtors alleges damages resulting from a concerted effort to interfere with the administration of the estate pursuant to a court-ordered sale of estate assets, the proceeding is "core," and the bankruptcy court has subject matter jurisdiction over the dispute. *See* 28 U.S.C. § 157(b). The allegations against the Defendants raise issues which directly affect the integrity of this Court and the bankruptcy sale process. This Court surely has jurisdiction to hear such a dispute.[2]

For these and the reasons that follow, the Defendants' Motion is denied.

---

[2] The Court makes no findings of fact in this Decision other than those facts necessary to find subject matter jurisdiction. The trial of this matter is ongoing and the allegations of bad acts by the Defendants are still *sub judice*.

**Factual Background[3]**

Pre-petition, the Debtor, Thatched LP, owned property at 445 East Main Street, Centerport, New York (the "Property"). A catering hall operated by Debtor, Joe's Friendly, was located on the Property (the "Thatched Cottage"). The Property was encumbered by a mortgage held by Plaintiff, BFCU. Non-debtor, Ralph Colamussi ("Colamussi") was the principal of both Debtors and was integral to the day-to-day management of the Thatched Cottage.

The Property, located on the waterfront, was allegedly damaged by hurricanes in August of 2011 and October of 2012.  Despite apparent efforts by Colamussi to obtain the funds to implement repairs to the Thatched Cottage, the record reflects that the damage was largely unremediated. During this time, although Colamussi was informed that improvements to the Property encroached onto property belonging to the Town, at no time did the Town inform Colamussi that the encroachments or hurricane damage necessitated a shutdown of the catering facility. The Debtors eventually defaulted on the BFCU loan, and BFCU commenced a foreclosure action on September 6, 2013.

On January 2, 2014, Thatched LP and Joe's Friendly filed separate voluntary petitions pursuant to chapter 11 of the Code. *See In re Joe's Friendly Serv. & Son, Inc.*, No. 14-BK-70001 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.); *In re Thatched Cottage LP*, No. 14-BK-70002 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.). The cases were jointly administered but not substantively consolidated. The Property constitutes the most valuable asset in Debtors' estates. The Thatched Cottage continued operations as a debtor-in-possession with no restrictions placed on it by the

---

[3]    Unless stated otherwise, the facts herein are derived from *Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.),* No. 16-AP-8035 (REG), 2019 WL 1313519 (Bankr. E.D.N.Y. Mar. 21, 2019*); Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.),* No. 19-CV-2010 (JS), 2019 WL 6310207 (E.D.N.Y. Nov. 25, 2019).

Town. In fact, the Town inspected the Property in its ordinary course and issued an occupancy and assembly permit on August 18, 2014.

After issues regarding Colamussi's mental health and fitness to operate the Thatched Cottage arose, the Court found that a chapter 11 trustee should be appointed. R. Kenneth Barnard was appointed as the chapter 11 trustee on July 14, 2014. The chapter 11 trustee moved to sell the Property pursuant to section 363(b) of the Code on July 24, 2014, which motion was granted. Pursuant to Court order entered August 11, 2014 authorizing the chapter 11 trustee to sell the Property (the "Sale Order"), a sale of the Property "as is" and "without all faults," was scheduled for September 24, 2014. At the auction sale, the chapter 11 trustee determined that Yama Raj ("Raj") was the highest bidder at $4,650,000 plus a buyer's premium of $186,000 for a total of $4,836,000, and that BFCU was the second highest bidder with a credit bid of $4,600,000 (the "Sale"). BFCU was bound by the terms of the Sale and required to close in the event of Raj's default pursuant to the bidding procedures approved by this Court. The Sale was originally scheduled to close on November 15, 2014.

Prior to the auction sale, on August 27, 2014, Colamussi emailed to the chapter 11 trustee engineering reports allegedly documenting unsafe conditions and costly repairs required at the Thatched Cottage. Colamussi also discussed the damage to the Thatched Cottage with the auctioneer prior to the sale. On September 23, 2014 Colamussi attempted suicide.

On October 6, 2014, the chapter 11 trustee, who had been winding down operations light of the impending sale, ceased operations at the Thatched Cottage.

On November 13, 2014, Colamussi hand-delivered to the Town's Fire Marshall's Office a package containing engineering reports indicating that the Thatched Cottage was unsafe (the "Colamussi Reports"). The Colamussi Reports were circulated throughout the Town

6

Supervisor's Office on November 14, 2014.  On November 17, 2014, even though the catering hall had operated for many years at the same location with no interference from the Town, the Town advised Raj that the Thatched Cottage would not be permitted to reopen until an engineering report proved that the Thatched Cottage was safe and Raj entered into a licensing agreement regarding the encroachments onto Town property.

Although Raj endeavored to obtain engineering reports showing that the Property was safe, Town employees relying exclusively on the Colamussi Reports, placarded the Property on November 20, 2014. The placard stated in part: "This Building is hereby declared unsafe and unfit for human habitation pursuant to the Code of the Town of Huntington. The Occupancy of this dwelling or any party thereof is unlawful." The placard also advised that violators would be subject to a $15,000 fine and/or six months imprisonment and included a telephone number for the Town. The placard did not assert a specific section of the Town Code or any other reason for the placarding.

In contravention of Town Code provisions, the Town failed to notify the Debtors, BFCU, the chapter 11 trustee or the Court that the building was unfit for occupancy or that repairs were necessary. The Town placarded the Property despite being in the midst of discussions with Raj concerning the Thatched Cottage's condition and despite the fact that the Property was the subject of a bankruptcy proceeding and protected by the automatic stay of section 362(a) of the Bankruptcy Code.

Shortly after the Town placarded the Property, Raj refused to close on the sale and BFCU, through its servicer Plaintiff, BSG, was required to take title the Property as the back-up bidder under the Sale Order.

7

This case was converted to chapter 7 on June 24, 2015. R. Kenneth Barnard was appointed the chapter 7 trustee. Over the next year and a half, the Town and Plaintiffs were in regular communication. The Defendants' attorney informed the Plaintiffs' attorney that no person should be inside the Thatched Cottage until the structural defects have been addressed by a professional engineer or architect who advised that the Thatched Cottage is safe or until permit plans have been submitted to the Town. The Plaintiffs commissioned an engineering report that was submitted to the town on April 16, 2016 (the "Pacifico Report"). On April 19, 2016, three days after receipt of the Pacifico Report, the Town removed the placard. Shortly after the removal of the placard, the Plaintiffs contracted to sell the Thatched Cottage for $2,800,000. The sale closed in September of 2016.

## Procedural History

### A. *The State Court Action and Removal to This Court*

The Plaintiffs commenced an action in New York State Supreme Court, Suffolk County, on February 11, 2016 (the "Litigation") alleging Defendants' misconduct in connection with the posting of the placard. The claims arise out of allegations that the Defendants orchestrated a plan with Colamussi to interfere with the sale of the Property by attempting to make the Property economically and physically unattractive to a third-party buyer; and the Defendants failed to follow proper procedures in determining whether to post the placard which ultimately harmed Plaintiffs due to the significant decline in value of the Property resulting from the placarding. The chapter 7 trustee commenced an adversary proceeding against the Town and Town employees asserting violations of state law and 42 U.S.C. § 1983 based on facts similar to those alleged in the Plaintiff's Litigation. *See Barnard v. Town of Huntington,* No. 16-AP-8025 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.).

8

The Defendants removed the Litigation to this Court on March 11, 2016 stating that "most of the factual allegations supporting each of the claims asserted in the [Litigation] relate to acts, occurrences or matters that either took place during the Bankruptcy Case or were addressed by [the Bankruptcy Court]"; "the Bankruptcy Court has jurisdiction over each cause of action asserted in the [Litigation]"; and the Litigation is a "core proceeding under 28 U.S.C. § 157, including subsections (A) and (N)." Notice of Removal 3. In the Notice of Removal, the Defendants "consent[ed] to the entry of final orders or judgments" by this Court "[t]o the extent any cause of action [ ] is subsequently determined to be non-core." Notice of Removal 3. After the Plaintiffs opposed removal and moved for remand, the parties entered into a so-ordered stipulation, where the Plaintiffs withdrew their motion to remand, consented to removal, and provided the Defendants with an extension of time to file an answer (the "So-Ordered Stipulation").

B. *Litigation in the Bankruptcy Court*

The Plaintiffs filed an amended complaint on August 12, 2016 asserting claims for tortious interference with contractual relations, tortious interference with prospective economic advantage, negligence, deprivation of procedural and substantive due process/deprivation of property rights pursuant to 42 U.S.C. § 1983, denial of equal protection pursuant to 42 U.S.C. § 1983, conspiracy pursuant to 42 U.S.C. § 1983, and attorneys' fees pursuant to 42 U.S.C. § 1988 (the "Amended Complaint"). The Defendants retained new counsel on October 4, 2016.

The Defendants filed a motion to dismiss the Amended Complaint which was primarily based on the assertion that the Plaintiffs lacked standing. The Court denied the Defendants' motion in its entirety on December 5, 2016. The Defendants filed an answer to the Amended

Complaint on December 27, 2016, adding the affirmative defense that the Defendants do not

consent to the entry of final orders or judgment by this Court.

A pre-trial conference was held on January 11, 2017. The Defendants filed a motion to

withdraw the reference on January 23, 2017. The Defendants did not obtain a stay of the

Litigation pending the outcome of the motion, the matter proceeded in the bankruptcy court and

the Court issued a pre-trial order setting a discovery deadline of April 28, 2017.

*C. Summary Judgment*

On July 31, 2017, the Defendants filed a motion for summary judgment, which the

Plaintiffs opposed. The Court denied the Defendants' motion for summary judgment in its

entirety on March 21, 2019.[4] The Defendants appealed the order denying summary judgment on

the basis that the individually named Defendants are entitled to immunity. The District Court

affirmed the denial of the Defendants' summary judgment motion on the basis of qualified

immunity and dismissed the appeal with respect to the substantive due process and equal

protection claims for lack of jurisdiction.

*D. Motion for a Determination that this Court Lacks Subject Matter Jurisdiction*

On November 25, 2019, the District Court issued a decision denying the Defendants'

request to withdraw the reference to this Court. The District Court refrained from ruling on the

Defendants' allegations that this Court did not have subject matter jurisdiction, finding that

"[b]ecause the Court has denied the motion to withdraw the reference, the bankruptcy court

should decide in the first instance any motion to dismiss for lack of subject matter jurisdiction."

---

[4]     The Court reopened discovery on January 29, 2018 based on newly discovered evidence, and the
parties filed supplemental briefs on April 13, 2018 which rendered the summary judgment motion fully
submitted.

*Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Service & Son Inc.),* 17-MC-0190 (JS), 2019 WL 6307468, at *8 (E.D.N.Y. Nov. 25, 2019).

On December 17, 2019, the Defendants filed the instant motion for an order determining that this Court lacks subject matter jurisdiction to hear and adjudicate this proceeding. The Defendants assert that the Plaintiffs' claims do not "arise under" the Code, "arise in" the Debtors' bankruptcy cases, or "relate to" the Debtors' bankruptcy cases (the "Dfs' Mot." or "Defendants' Motion"). The Plaintiffs oppose the motion arguing that their claims "arise under" the Code, "arise in" the Debtors' bankruptcy cases, and "relate to" the Debtors' bankruptcy cases. The Plaintiffs also argue that the Defendants should be estopped from adopting a position regarding the Court's subject matter jurisdiction that is inconsistent with the Defendants' previous positions (the "Pls' Opp'n"). The Defendants filed a reply on January 10, 2020 (the "Dfs' Reply").

The Court ruled on the motion at the commencement of trial on January 13, 2020, finding that it has subject matter jurisdiction, and indicated that this written Decision would follow. The trial is currently scheduled to recommence on July 20, 2020.

## Discussion

### A.  *The Defendants Initiated Removal of this Litigation to the Bankruptcy Court*

The statutory basis to remove a case from state court to federal court is governed by title 28 of the United States Code. "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. "[D]istrict courts [ ] have original and exclusive jurisdiction of all cases under

11

title 11." 28 U.S.C. § 1334(a). "[T]he district courts [ ] have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11" notwithstanding "any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts" and except as stated in 28 U.S.C. § 1334(e)(2). 28 U.S.C. § 1334(b). Under 28 U.S.C. § 1334(e), "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction (1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate;" and "(2) over all claims and causes of action that involve construction of section 327 of title 11, United States Code, or rules related to disclosure requirements under section 327." 28 U.S.C. § 1334(e).

With respect to removal to bankruptcy court, "[a] party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452.

The process of removing a case to a bankruptcy court is governed by Rule 9027 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P." or "Bankruptcy Rule"). To remove a case to a bankruptcy court, "a notice of removal [must] be filed with the clerk for the district and division within which is located the state or federal court where the civil action is pending" and must "contain a short and plain statement of the facts which entitle the party filing the notice to remove, contain a statement that upon removal of the claim or cause of action, the party filing the notice does or does not consent to entry of final orders or judgments by the bankruptcy court, and be accompanied by a copy of all process and pleadings." Fed. R. Bankr. P. 9027(a)(1). After

filing a notice of removal, the filing party must serve a copy of the notice of removal on all parties to the removed claim or cause of action as well as a copy with the clerk of court from which the claim or cause of action is removed. Fed. R. Bankr. P. 9027(b), (c).

Removal of the claim or cause of action is "effected" on the filing of the notice of removal. Fed. R. Bankr. P. 9027(c); 28 U.S.C. § 1446. If the civil action was initiated before the subject bankruptcy case, a notice of removal must be filed within the longer of 90 days after the order for relief in a case under the Code, 30 days after entry of an order terminating a stay if the subject proceeding was stayed under section 362 of the Code, or "30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief." Fed. R. Bankr. P. 9027(a)(2). If the civil action was initiated after the subject bankruptcy case, "a notice of removal may be filed with the clerk only within the shorter of (A) 30 days after receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim or cause of action sought to be removed, or (B) 30 days after receipt of the summons if the initial pleading has been filed with the court but not served with the summons." Fed. R. Bankr. P. 9027(a)(3). "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

After removal to the district court, or bankruptcy court if the case has been referred to a bankruptcy judge, the bankruptcy judge, "may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the court from which the claim or cause of action was removed or otherwise." Fed. R. Bankr. P. 9027(e)(1). A party who filed a pleading in connection with the removed claim or cause of action but did not file the notice of

removal "shall file a [signed] statement that the party does or does not consent to final orders or judgment by the bankruptcy court" within 14 days after the filing of the notice of removal. Fed. R. Bankr. P. 9027(e)(3).

Removal is a very powerful tool which may deprive a plaintiff of its choice of forum and should not be employed frivolously. The Defendants submitted to this Court's jurisdiction by filing a notice of removal under 28 U.S.C. § 1452 and representing that this Court had subject matter jurisdiction over the Litigation. Unlike the Plaintiffs, who were deprived of their chosen forum upon the filing of the notice of removal, the Defendants actively sought this forum. The Plaintiffs opposed the notice of removal by filing a motion to remand. Instead of stipulating to remand as the Defendants should have if they really did believe this Court lacked subject matter jurisdiction over the Litigation, the Defendants again submitted to this Court's jurisdiction in a stipulation so-ordered by this Court. As a result, Plaintiffs withdrew their motion for remand and agreed litigate here. The Defendants' subsequent efforts to undo the removal and the So-Ordered Stipulation is puzzling, at best.

### B.  *Reconsideration*

Although not styled as a motion to reconsider the So-Ordered Stipulation, this Court finds that the instant Motion by the Defendants is just that. In the So-Ordered Stipulation, the Court necessarily, albeit implicitly, found it had subject matter jurisdiction.[5] The Defendants are in effect seeking to reverse this finding and as such, the Defendants' Motion may be considered as

---

[5]    The Court similarly did so when it denied the Defendants' motions to dismiss and for summary judgment. *See* Order Denying Mot. to Dismiss Adversary Proceeding 1, December 12, 2016, ECF No. 34; *Bethpage Fed. Credit Union v. Town of Huntington (In re Joe's Friendly Serv. & Son, Inc.),* No. 16-AP-8035 (REG), 2019 WL 1313519 (Bankr. E.D.N.Y. Mar. 21, 2019*). See Tancredi v. Metro. Life Ins. Co.,* 378 F.3d 220, 225 (2d Cir. 2004) ("In dismissing, and affirming the dismissal of, plaintiffs' complaint for failure to state a claim, both the district court and this Court implicitly recognized subject matter jurisdiction.").

a motion for reconsideration. *See Byrne v. Liquid Asphalt Sys., Inc.*, 250 F.Supp.2d. 84, 88 (E.D.N.Y. 2003). Defendants neither appealed nor sought leave to appeal the So-Ordered Stipulation. *See* 28 U.S.C. § 158. Reconsideration of the So-Ordered Stipulation is time-barred. Even if it were not, reconsideration would be denied on the merits as discussed below. Moreover, Defendants should not be permitted to this back-door challenge to subject matter jurisdiction that it freely consented to.

Motions to reconsider are analyzed under Bankruptcy Rule 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Federal Rule of Civil Procedure") and Bankruptcy Rule 9024 which incorporates Federal Rule of Civil Procedure 60. Federal Rule of Civil Procedure 60(b) permits a party to seek relief from a "*final* judgment, order, or proceeding." It does not provide for relief from interlocutory orders. *Remington Prod., Inc. v. N. Am. Philips, Corp.,* 755 F. Supp. 52, 54 (D. Conn. 1991) ("[Federal Rule of Civil Procedure] 60(b) applies only to final determinations and not to interlocutory orders.") (citing *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501 (2d Cir. 1989))." Interlocutory orders may be challenged pursuant to Bankruptcy Rule 9023. *See Byrne*, 250 F.Supp.2d.at 88; E.D.N.Y. LBR 9023-1(b) ("A motion for reconsideration of an order may be made pursuant to Bankruptcy Rule 9023").

The So-Ordered Stipulation here was an interlocutory order subject to review under Bankruptcy Rule 9023, as it "did not end the adversary proceeding on the merits . . . [or] dispose of discrete issues within the adversary proceeding." *North Fork Bank v Abelson,* 207 B.R. 382, 389 (E.D.N.Y. 1997); *Menoken v. McNamara*, 213 F.R.D. 193, 195 (D.N.J. 2003) ("[A]n order denying remand to the state court, finding removal was proper, is generally not appealable as a final order.").

15

Pursuant to Local Bankruptcy Rule 9023-1(b), "a motion for reconsideration of an order may be made pursuant to Bankruptcy Rule 9023." Rule 9023 states,

> Except as provided in this rule and Rule 3008, Rule 59 FR Civ P applies in cases under the Code. A motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment. In some circumstances, Rule 8008 governs post-judgment motion practice after an appeal has been docketed and is pending.

"A motion to reconsider must be filed within 14 days of the entry of the judgment." *In re Hassan,* 527 B.R. 97, 102 (Bankr. E.D.N.Y. 2015); *see also* Fed. R. Bankr. P. 9001(7) ("judgment" in this context means any appealable order); 28 U.S.C. § 158(a)(3) (interlocutory orders are appealable with leave of court).

Here, the So-Ordered Stipulation was docketed on July 11, 2016. The Defendants' Motion was filed on December 12, 2019, which is several years beyond the 14 days allotted by Bankruptcy Rule 9023 and the Court is precluded from enlarging the Defendants' time to file the motion to reconsider. Fed. R. Bankr. P. 9006(b)(2) ("The court may not enlarge the time for taking action under Rules 1007(d), 2003(a) and (d), 7052, 9023, and 9024"). Therefore a motion for reconsideration would be untimely.

Courts have found that when a motion brought under Rule 9023 is untimely, it should be evaluated under Rule 9024. *See In re 231 Fourth Avenue Lyceum LLC,* 513 B.R. 25, 30 (Bankr. E.D.N.Y. 2014) ("As the Motion [to reargue a lift-stay motion] is untimely under Bankruptcy Rule 9023, it will be evaluated as a motion under Bankruptcy Rule 9024, which incorporates [FRCP] 60(b)"). Even still, a motion pursuant to Federal Rule of Civil Procedure 60(b) would be untimely, as it "must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after entry of the judgment or order or the date of the proceeding." Fed. R. Civ.

16

P. 60(c)(1). Bankruptcy Rule 9006(b) similarly prohibits enlargement of time. Therefore, to the extent this Motion seeks to reconsider this Court's prior finding on subject matter jurisdiction, the motion may be denied as untimely under both Rules 9023 and 9024. *Kyriazi v. Rumsfeld*, 67 Fed.Appx. 7, 10 (2d Cir. 2003) (affirming a district court's denial of a FRCP 60(b) motion as untimely).

Even if reconsideration of the So-Ordered Stipulation were not time-barred under Bankruptcy Rules 9023 and 9024, the Court would still deny reconsideration on the merits. The Second Circuit has held that the "standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusions reached by the court." *S. New England Telephone Co., v. Global Naps, Inc.,* No. 3:04-cv-2075 (JCH), 2007 WL 9757857, at *1 (D. Conn. Dec. 28, 2007) (quoting *Shrader v. CSX Transp., Inc,* 70 F.3d 255, 257 (2d Cir. 1995)). "There are three grounds that justify granting a motion for reconsideration: (1) an intervening change in controlling law; (2) the availability of newly discovered evidence; and (3) the need to correct clear error or prevent manifest injustice." *Id.* "That the court overlooked controlling law or material facts before it may also entitle a party to succeed on a motion to reconsider." *Id.* A motion for reconsideration "will not be granted if the party is merely seeking to relitigate the issue already decided by the court." *Byrne,* 250 F.Supp.2d at 88. "The decision to grant or deny a motion for reconsideration is within the sound discretion of the court." *Id.*

The Defendants do not assert an intervening change in controlling law or that new evidence is available. The only articulated change since the filing of the notice of removal is that the Plaintiffs amended their complaint, which the Defendants argue destroys this Court's subject

matter jurisdiction. Mot. 2-3. However, "after proper removal to federal court, post-removal amendments generally do not destroy statutory subject-matter jurisdiction." *In Touch Concepts Inc. v. Cellco P'ship,* 788 F.3d 98, 100-01 (2d Cir. 2015). The record is devoid of any evidence that reconsideration is necessary to "prevent manifest injustice" or that this Court "overlooked controlling law or material facts" that entitle the Defendants to reconsideration of the So-Ordered Stipulation. *Global Naps*, 2007 WL 9757857, at *1. To the extent the Defendants' Motion is in effect a motion to reconsider this Court's prior finding of subject matter jurisdiction, the Motion is denied.

### C.  Judicial Estoppel

The Plaintiffs argue that the Defendants should be judicially estopped from adopting the position that the Court lacks subject matter jurisdiction because the Defendants took the position that this Court had subject matter jurisdiction, obtained removal on that basis, and actively participated in this Litigation for nearly four years.

#### a.  Applicable Standard

The Supreme Court has described the doctrine of judicial estoppel as follows:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him. This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.

*New Hampshire v. Maine,* 532 U.S. 742, 749 (2001) (internal citations and quotations omitted). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the

moment." *Id.* at 749-50 (internal citations and quotations omitted). While "[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," courts often weigh several factors in determining whether judicial estoppel should be applied to a specific case: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal citations and quotations omitted). These factors are not meant to serve as inflexible prerequisites or as an exhaustive formula, and courts are permitted to use "additional considerations" to "inform the doctrine's application in specific factual contexts." *Id.* at 751. The Second Circuit has "further limit[ed] judicial estoppel to situations where the risk of inconsistent results with its impact on judicial integrity is certain." *Intellivision v. Microsoft Corp.,* 484 Fed.Appx. 616, 619 (2d Cir. 2012) (summary order) (citing *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 397 (2d Cir. 2011)).

Although the Second Circuit has not held that judicial estoppel can never be applied to matters affecting subject matter jurisdictions, it has recognized that "as an equitable doctrine, judicial estoppel does not rest easily with the concept of standing, a prerequisite to federal subject matter jurisdiction" and that special care should be taken in determining whether judicial estoppel applies. *Id.* at 621 (internal citations and quotations omitted). With respect to subject matter jurisdiction, the Supreme Court held in *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982), that "no action of the parties can confer subject-matter

jurisdiction upon a federal a court . . . [so] the consent of the parties is irrelevant, principals of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." *Ins. Corp. of Ir.*, 456 U.S. at 702.[6] While judicial estoppel does not apply to positions taken on questions of law and cannot be used to confer subject matter jurisdiction as a matter of law, it may be applied to the factual representations that support a legal conclusion that subject matter jurisdiction exists. *See Techno-TM, LLC v. Fireaway, Inc.,* 928 F.Supp.2d 694, 698-99 (S.D.N.Y. 2013) (applying judicial estoppel to prevent members of the plaintiff company from assuming a contrary position with respect to their domicile and therefore finding that there was no diversity jurisdiction).

    *b.  Application*

The Defendants' current position that this Court lacks subject matter jurisdiction is "clearly inconsistent" with their prior position in securing removal of this action from state court. While judicial estoppel does not apply to legal arguments, it does apply to the inconsistent factual representations made in support of the inconsistent legal arguments asserted here. *See Techno-TM,* 928 F.Supp.2d 694 at 688-89. Specifically, the Defendants previously asserted that "[m]ost of the factual allegations supporting each of the claims asserted in the [Litigation] relate to acts, occurrences or matters that either took place during the Bankruptcy Case or were addressed by this Court in the Bankruptcy Case." Notice of Removal 3. The brevity of the Defendants' representation does not limit its broad scope; that is, the Defendants took the

---

[6]    With respect to "principals of estoppel," the Supreme Court directly cited *Am. Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17-18 (1951). *Id. American Fire* stood for the proposition that estoppel cannot create jurisdiction. *American Fire,* 341 U.S. at 16-18 (distinguishing cases where "[t]he defendant who had removed the action was held to be estopped from protesting that there was no right to removal," and reasoning that "[s]ince the federal court could have had jurisdiction originally, the estoppel did not endow it with a jurisdiction it could not possess.").

position in the notice of removal that this lawsuit relates to the sale of property of the estate which took place pursuant to an Order of this Court, and makes allegations that Defendants improperly interfered with the sale process.

The Defendants now take the position that this Litigation does not concern orders of this Court or property of the Debtors' estates. The Defendants have not alleged new facts, a change in law, or any tenable distinction that would reconcile its change in position. As such, the Court must conclude that the Defendants were either disingenuous in either their prior position, or the current one. After years of litigation and associated costs, acceptance of the Defendants' current position concerning subject matter jurisdiction without any change in the materials facts of this case would prejudice the Plaintiffs who have litigated in this forum for years and would be forced to  incur additional expense if required to re-litigate in a new forum.

The Court finds that the Defendants here are judicially estopped from contradicting their prior factual representation that "most of the factual allegations supporting each of the claims asserted in the [Litigation] relate to acts, occurrences or matters that either took place during the Bankruptcy Case or were addressed by this Court in the Bankruptcy Case." Notice of Removal 3. The result is that the Defendants' Motion is neutered of its support to the extent it conflicts with the Defendants' prior representation. The Defendants' are left with the argument that this Court lacks subject matter jurisdiction even though the factual allegations supporting the Plaintiffs' claims "relate to acts, occurrence or matters that either took place during the Bankruptcy Case or were addressed by this Court."

### D.  Promissory Estoppel

The Defendants represented in the notice of removal that "[t]o the extent any cause of action is subsequently determined to be non-core under 28 U.S.C. § 157, the Defendants consent

21

to the entry of final orders or judgments by the United States Bankruptcy Court." The Plaintiffs argue that this constituted a promise that the Plaintiffs relied on when they agreed to withdraw their objections to removal and that they would be prejudiced if the Defendants were permitted to renege on their promise in light of the substantial preparation and motion practice that has already occurred. Pls' Opp'n 16-17.

### a. Applicable Standard

"A cause of action for promissory estoppel under New York law requires the plaintiff to prove three elements: 1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).

### b. Application

Black's Law Dictionary defines a "promise" as, "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something;" and "[t]he words in a promissory note expressing the maker's intention to pay a debt." PROMISE, Black's Law Dictionary (11th ed. 2019); *See also CP Found. of Nassau, Inc. v. Meyers,* 17-CV-1866 (JMA)(AYS), 2019 WL 1384083, at *3 (E.D.N.Y. Mar. 27, 2019). Here, the Defendants manifested an intention in the notice of removal to permit this Court to bind both them and the Plaintiffs via final orders and judgments for non-core proceedings. The parties soon thereafter agreed to the So-Ordered Stipulation where the Plaintiffs agreed to withdraw their motion to remand and consented to removal. The Plaintiffs reasonably relied on the Defendants' promise in the form of their consent to the entry of final orders and judgments for non-core proceedings by this Court. The Plaintiffs entered into the So-Ordered Stipulation and withdrew

their motion to remand under the expectation that Defendants consented to the entry of final orders and judgments by this Court regardless of whether the proceedings were core or non-core. If this Court were to condone the Defendants late-hour change in litigation strategy Plaintiffs would be injured by the duplication of litigation efforts, and the associated costs, that would ensue if this matter were transferred back to state court. Accordingly, the Defendants are promissorily estopped from withdrawing their consent to this Court's entry of final orders and judgments in this matter.

### E.  Law of the Case

There are two branches to the law of the case doctrine. First, the "mandate rule" requires "a trial court to follow an appellate court's previous ruling on an issue in the same case." *U.S. v. Quintieri,* 306 F.3d 1217, 1225 (2d. Cir. 2002). "The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court." *Id.* There, once a "court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case unless cogent and compelling reasons militate otherwise." *Norton v. Town of Brookhaven,* 2:13-cv-3520 (ADS)(GRB), 2020 WL 364159, at *4 (E.D.N.Y. Jan. 21, 2020) (internal quotations and citations omitted). "Compelling reasons include an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice. The law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions." *Id.* (internal citations and quotations omitted). However, the law of the case doctrine does not apply to motions challenging a court's subject matter jurisdiction. *Id.* at *5.

The Plaintiffs argue that the Defendants' consent to jurisdiction became the law of the case after the Defendants represented that most of the factual allegations in this Litigation

related to acts, occurrences, or matters that occurred in the bankruptcy cases or were addressed

by this Court, and the Court "accepted Defendants' representations as a basis to exercise its

jurisdiction and expend valuable resources in adjudicating this matter." However, the law of the

case doctrine should not be applied in this instance, and the Court may consider anew whether it

has subject matter jurisdiction over the Litigation. *Norton*, 2020 WL 364159, at *5.

F.  *Subject Matter Jurisdiction*

a.  *Applicable Standard*

District courts have "original and exclusive jurisdiction of all cases under title 11." 28

U.S.C. § 1334(a). A district court may refer a bankruptcy case or proceeding to the bankruptcy

judges for the district. 28 U.S.C. § 157(a). The Eastern District of New York has, by standing

order, referred all cases arising under title 11 to the Bankruptcy Court. Eastern District of New

York Standing Order of Reference dated August 28, 1986, as amended by Order dated December

5, 2012. "A bankruptcy court's power to adjudicate matters in a bankruptcy case turns in part on

whether the proceedings are 'core' or 'non-core.'" *Kirschenbaum v. U.S. Dep't of Labor (In the*

*Matter of Robert Plan Corp.),* 777 F.3d 594, 596 (2d Cir. 2015). Core proceedings "aris[e]

under" or "aris[e] in" a bankruptcy case. *Id.*; 28 U.S.C. § 157(b).

A proceeding "aris[es] under" the Code when it "clearly invoke[s] substantive rights

created by federal bankruptcy law." *Robert Plan Corp.,* 777 F.3d at 596. A proceeding "aris[es]

in" a bankruptcy case when it invokes "claims that are not based on any right expressly created

by [the Code], but nevertheless, would have no existence outside of the bankruptcy." *Id.* at 596-

97. Congress codified a non-exhaustive list of 16 different types of matters that constitute "core

proceedings." 28 U.S.C. § 157(b)(2). A proceeding may also be "core" by virtue of its nature if

either "(1) the type of proceeding is unique to or uniquely affected by the bankruptcy

24

proceedings, ... or (2) the proceeding[ ] directly affect[s] a core bankruptcy function." *Luan Inv. S.E. v. Franklin 145 Corp., (In re Petrie Retail, Inc.),* 304 F.3d 223, 229 (2d Cir. 2002) (internal citations omitted). "Bankruptcy judges may hear and enter final judgments in 'all core proceedings arising under title 11, or arising in a case under title 11.'" *Stern v. Marshall,* 564 U.S. 462, 474 (2011).

A bankruptcy court also has jurisdiction to "hear a proceeding that is not a core proceeding but that is otherwise related to a case under" the Code. 28 U.S.C. § 157(c)(1). Whether a proceeding is "related to a case under" the Code generally depends on "whether the outcome of the proceeding could conceivably have any effect upon the debtors' estate being administered." *Robert Plan Corp.,* 777 F.3d at 597. Some courts also find "related to" jurisdiction where the parties are sufficiently "intertwined" with a debtor. *Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,* No. 95-Cv-0277 (LAP), 1995 WL 489711, at *3-5 (S.D.N.Y. Aug. 15, 1995); *Ameritrust Co., N.A. v. Opti-Gage, Inc. (In re Opti-Gage, Inc.),* 128 B.R. 189, 195 (S.D. Ohio 1991) (holding "that proceedings are 'related to' bankruptcy cases not only where the outcome of the proceeding may conceivably have an effect upon the estate being administered, but also where parties are sufficiently *intertwined* with the debtor") (emphasis in original). "When a bankruptcy judge determines that a referred proceeding is not a core proceeding but is otherwise related to a case under title 11, the judge may only submit proposed findings of fact and conclusions of law to the district court." *Stern*, 564 U.S. at 475 (citing 28 U.S.C. § 157(c)(1)) (internal quotations omitted). The district court then enters a final judgment after a *de novo* review of any matter to which a party objects. *Id.* A bankruptcy judge may nevertheless enter appropriate orders and judgments for proceedings related to a case under title 11 if all parties to the proceeding consent. 28 U.S.C. § 157(c)(2).

25

### b. Application

#### i. Core v. Non-Core

The Defendants maintain that there is no "arising under" or "arising in" jurisdiction. The Defendants allege that there is no "arising under" jurisdiction because the Plaintiffs' claims do not invoke a substantive right created by the Code, including the failure to allege a violation of the automatic stay. The Defendants also argue that the Plaintiffs' claims do not concern the administration of the estate because the Property was not property of the estate when the Plaintiffs commenced this action. The Defendants similarly claim that there is no "arising in" jurisdiction because the "[ ] Complaint does not assert any rights or claims arising from any orders entered by this Court, nor do Plaintiffs seek the interpretation of any orders of this Court." Dfs' Mot. 7. The Defendants assert that the "Plaintiffs' claims are based purely on federal non-bankruptcy and state law and could proceed in a court without bankruptcy jurisdiction," as the "substance of Plaintiffs' claims is whether they were damaged by Defendants' actions in the posting of the placard on the Thatched Cottage and maintaining that placard until April 2016." *Id.*

The Plaintiffs assert that the Defendants admitted that this Litigation was a "core" proceeding and a matter concerning the administration of the estate that included an order approving the sale of property of the estate. Pls' Opp'n 4 (citing 11 U.S.C. §§ 157(b)(2)(A), (N)). The Plaintiffs argue that the Thatched Cottage and accompanying land were the single largest assets in the Debtors' estates, which means that this matter necessarily concerned the administration of the bankruptcy estate. The Plaintiffs state that their damages were incurred in connection with BFCU's obligation as the second highest bidder under the Court's sale order and

26

bidding procedures to take title to the premises and the Town's allegedly unlawful placement and refusal to remove the placard for seventeen months.

The Plaintiffs rely on the Second Circuit's decision in *In re Petrie*, which "affirmed that a dispute between two non-debtors was a 'core' proceeding because, at the time of commencement, it involved (i) rights or obligations created by the Bankruptcy Court's sale order; and (ii) matters concerning the administration of the estate as to core bankruptcy functions." Pls' Opp'n 5 (citing *Petrie*, 304 F.3d at 229-30). The Plaintiffs analogize this matter to *Petrie*, stating that this adversary proceeding concerned the administration of the estate and the Plaintiffs' rights and obligations under the sale order. Further, the Plaintiffs contend that this adversary proceeding "flows" from the Court's administration of the Debtor's estate and is therefore a "core" matter. Pls' Opp'n 5 (citing *Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.),* 302 B.R. 792, 807 (Bankr. S.D.N.Y. 2003)). The Plaintiffs contend that "this dispute has no practical existence outside of bankruptcy because it is inexorably intertwined with, and necessarily dependent upon, the subject debtors' bankruptcy petition." Pls' Opp'n 8.

In response to the argument that the Plaintiffs' claims "arise in" the Debtors' bankruptcy cases because their damages were incurred in connection with BFCU's obligations as the second highest bidder, the Defendants argue (1) the Plaintiffs are not seeking an interpretation of an order of the Court; (2) "the Amended Complaint does not make any allegation or assert any claim for damages as a result of Plaintiffs' obligation under the bid procedures and sale orders;" (3) the "Defendants had no obligations under any of the sale orders and there are no allegations that any of the Defendants forced Plaintiffs to bid at the auction;" and (4) "the sale orders do not direct Defendants to undertake any action and expressly provides that Plaintiffs are purchasing

27

the Thatched Cottage properties 'as is', 'where is' and subject to all faults, regulations, violations

or conditions requiring corrective action." Dfs' Mot. 8. The Defendants argue that *Petrie* is

inapplicable because, unlike *Petrie*, the Plaintiffs do not seek to enforce the sale and

confirmation orders, and the Amended Complaint presents no issue in dispute that require the

interpretation of an order of the Court. Dfs' Reply 5.

With respect to "arising under" jurisdiction, Plaintiffs have not identified any section

other than section 362 of the Bankruptcy Code, that applies to its claims. However, any reliance

by the Plaintiffs on the assertion that a violation of the automatic stay under section 362 created

"arising under" jurisdiction is misplaced because none of the claims or pleadings in the Amended

Complaint allege a stay violation.[7] Therefore, the Court finds that it does not have "arising

under" jurisdiction under this analysis.  However, the Plaintiffs were the largest secured creditor

in this case, and the Plaintiffs' claims concern damages allegedly incurred through the

administration of its collateral pursuant to section 363 of the Bankruptcy Code and orders of this

Court, which is a matter affecting the administration of the estate.

Matters affecting the administration of the estate fall squarely within this Court's core

jurisdiction. 28 U.S.C. § 157(b)(2)(A). The Property was the largest asset in the Debtors' estate.

"The purpose of a § 363(b) sale is to transform assets . . . into cash in an effort to maximize

value" and "the benefit to the debtor's entire estate." *In re TWA*, Case No. 01-00056 (PJW), 2001

Bankr. LEXIS 980, at *31-33 (Bankr. D. Del. Apr. 2, 2001). The Plaintiffs have alleged that the

Defendants' actions were designed to thwart the sale of the Property to a person other than

---

[7]    While the Court acknowledged the potential violation of the automatic stay in its Decision
denying summary judgment, the Plaintiffs did not allege a violation of the automatic stay, nor is any relief
sought by the Plaintiffs dependent on a finding of a violation of the automatic stay. *Joe's Friendly,* 2019
WL 1313519, at *9-10.

Colamussi, thereby impeding the administration of the estate as directed by the Court. The Plaintiffs allege that the estates' return on the sale of the Property was directly impacted by the Defendants actions, as the section 363 sale ultimately realized $236,000 less than Raj's winning bid. The Plaintiffs' status as the largest secured creditor of the Debtors' estates is significant. The Plaintiffs entered this bankruptcy with a $5.7 million secured claim. While the Plaintiffs did take title to the Property pursuant to their credit bid, they ultimately sold the Property for approximately $2 million less than Raj's original bid at the section 363 auction. Although a less than favorable return on the sale of real estate is not necessarily actionable, a party's interference with a section 363(b) sale in violation of the law is. The Plaintiffs allege that Defendants exercised control over the Property in violation of the Town's procedures when they placarded the Property in between the Sale and closing. The Plaintiffs allege that the depreciated value of the Property was the direct result of the Defendants' interference with the Sale and subsequent failure to remove the placard. In short, the Amended Complaint alleges injury to the largest creditor of the Debtors' estate caused by the Defendants' interference with this Court's Sale Order.

The Plaintiffs' contention that this Court does not possess jurisdiction to oversee allegations of a blatant attack on the sale process and the administration of the estate assets is off the mark. To further suggest that under these facts this Court's jurisdiction lapsed as soon as the Property was no longer property of the estate is absurd. The Defendants advocate a rule which would strip the bankruptcy court of jurisdiction to decide allegations that a defendant sabotaged the section 363(b) sale process. The Court will not simply brush off allegations of interference with the bankruptcy sale process which is fundamental to this Court's core jurisdiction. *See*

*Petrie,* 304 F.3d at 229; 28 U.S.C. § 157(b)(2)(N) ("Orders approving the sale of property are core bankruptcy proceedings.")[8]

The fact that the Plaintiffs' claims, all pursuant to New York common law and federal non-bankruptcy law, may be brought outside of a bankruptcy action is of no import. "Common-law claims closely connected with the administration of the bankruptcy can qualify as 'arising in' a bankruptcy even though they may, in a literal sense, be brought outside a bankruptcy action." *Lothian Cassidy, LLC v. Lothian Exploration & Dev. II, L.P.*, 487 B.R. 158, 162 (S.D.N.Y. 2013). This Court finds the same is true for the federal non-bankruptcy claims asserted herein. Accordingly, the Court finds that this Litigation is a core proceeding in that it "ar[ose] in" the Debtors' jointly administered bankruptcy cases.

Even if the Litigation was not a "core" proceeding as enumerated in sections 157(b)(2)(A), (N), it is "core" by virtue of its nature. This proceeding is "unique to or uniquely affected by" the bankruptcy proceedings because the factual predicate for the Litigation, alleged malfeasance affecting a section 363(b) sale ordered by the Court, would not exist without the underlying bankruptcy case. *Petrie,* 304 F.3d at 229. Further, the interference with a section 363 sale approved by a Court order "directly affect[s]" both the administration of the estate and an order approving the sale of property, both of which are "core bankruptcy function[s]." *Id.* Where, as here, a lawsuit between two non-debtors, one of which is the largest secured creditor of the

---

[8] Additionally, the Sale Order imposed obligations upon the Plaintiffs with respect to the Sale which obligations bolster their argument that this Court has subject matter jurisdiction to hear this dispute. The bid procedures associated with the Sale were approved by the Sale Order and required Plaintiff, BFCU to purchase the Property upon Raj's default. Plaintiffs' rights and obligations with respect to the sale were therefore "established as part of the core bankruptcy court function of approving the sale of the [Property]." *Petrie,* 304 F.3d at 229-30.

estate, alleges a scheme to intentionally interfere with the administration of the estate, the lawsuit is a core proceeding.

*ii.   Related to Jurisdiction*

While this Court has "arising in" jurisdiction over this Litigation, it does not have "related to" jurisdiction. In the chapter 7 context, a bankruptcy court has "related to" jurisdiction over a dispute if the "outcome of the proceeding could conceivably have any effect upon the debtor's estate being administered." *Robert Plan Corp.,* 777 F.3d at 597. Some courts have also found "related to" jurisdiction where the parties to a proceeding among non-debtors are sufficiently "intertwined" with the debtor. *Nemsa,* 1995 WL 489711, at *3-5.

The Defendants argue that the Court lacks "related to" jurisdiction because the Plaintiffs seek damages on their own behalf, not on behalf of the estate, and therefore the claims will not have any conceivable effect on the Debtors' estate. Dfs' Mot. 10-11. The Defendants also argue that "jurisdiction does not follow the property, but rather, lapses when the property leaves the debtor's estate." *Id.* 10-11 (*quoting In re Hall's Motor Transit Co.*, 889 F.2d 520, 522 (3d Cir. 1989)). The Defendants further suggest that the Plaintiffs' claims are not based on the Sale Order but are focused on the Property. The Plaintiffs responded that at the commencement of the action, the outcome of this adversary proceeding would "conceivably have an[] effect on the estate[s]" because the subject Property was the Debtors' primary asset. Pls' Opp'n 10-11 (citing *ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.),* 285 B.R. 127, 136-37 (Bankr. S.D.N.Y. 2002)).

The Court agrees with the Defendants that the outcome of this Litigation will not have any effect on the estate. The Plaintiffs do not seek damages on behalf of the estate. Damages here are based on the Defendants' alleged devaluing of the Property resulting from the improper

31

placement of the placard thus causing a substantially diminished repayment on Plaintiffs' secured debt. A recovery from this suit would benefit the Plaintiffs alone and is therefore insufficient to establish "related to" jurisdiction. *Cf. Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.,* 639 F.3d 572, 579 (2d Cir. 2011) ("If either [plaintiff] is successful in their claims against [the defendant], the funds they recover will benefit the respective bankruptcy estates . . . It is not difficult to conclude that the "conceivable effect" test is satisfied. The present actions are therefore "related to" the § 304 proceeding.").

Similarly, the parties are not sufficiently "intertwined" with the Debtors to establish "related to" jurisdiction. It is true that at the time the Defendants removed this Litigation from state court the chapter 7 trustee had commenced an adversary proceeding against the Town and other defendants on behalf of the Debtors' estates. As the Defendants noted, the chapter 7 trustee "assert[ed] nearly identical claims against [the] Defendants to those asserted in" the Litigation, and "most of the factual allegations supporting each of the claims asserted in the [Litigation] relate to acts, occurrences or matters that either took place during the Bankruptcy Case or were addressed by this Court in the Bankruptcy Case." Notice of Removal 3. The chapter 7 trustee's complaint alleged claims of (i) a willful violation of the automatic stay; (ii) tortious interference with contractual relations; (iii) negligence; (iv) deprivation of substantive and procedural due process; and (v) attorneys' fees based on the placarding of the Property and surrounding circumstances. *See* Adversary Complaint, *Barnard v. Town of Huntington, et al.,* No. 16-AP-8025 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.)[9] Although the trustee's claims and the instant Litigation are based on the identical factual circumstances, a factual nexus between a civil proceeding and a bankruptcy case is insufficient to establish "related to" jurisdiction. *Nemsa,*

---

[9] The trustee's action against the Town has been settled and is now closed.

1995 WL 489711, at *4 (citing *Opti-Gage, Inc.*, 128 B.R. at 196). The test is instead whether the parties are sufficiently intertwined with the Debtors. *Id.* at *5. Here, both parties are non-debtors and neither is "sufficiently intertwined" with the Debtors' to establish "related to" jurisdiction.

Since the outcome of this Litigation will have no conceivable effect on the Debtors' estate and the parties are not sufficiently intertwined with the Debtors, there is no "related to" jurisdiction over this Litigation.

<b>Conclusion</b>

For the reasons stated above, the Court finds that the Defendants should be estopped from contesting this Court's subject matter jurisdiction over this Litigation in that they affirmatively sought this Court's jurisdiction by removing this matter from state court; they later stipulated to the entry of final orders by this Court in non-core matters, a stipulation which was so-ordered by this Court and which was not timely appealed or reconsidered and which was relied upon by the Plaintiffs in their decision to allow this matter to remain before the bankruptcy court.

The Court further finds that it has subject matter jurisdiction over the Litigation. This matter is "core" as that term is defined in 28 U.S.C. § 157(b) in that it is a "matter concerning the administration of the estate" that "arises in" these bankruptcy cases. An Order consistent with this Decision will be entered forthwith.



**Dated: Central Islip, New York**
**June 11, 2020**

**Robert E. Grossman**
**United States Bankruptcy Judge**